877 P.2d 898

STATE of Idaho, Plaintiff–Respondent,

v.

Russell A. HANSEN, Defendant–
Appellant.

No. 20045.

Supreme Court of Idaho,
Boise, February 1994 Term.

June 9, 1994.

Chenoweth & Whitehead, Orofino, for appellant. Richard L. Baughman, argued.

Larry EchoHawk, Atty. Gen. and Thomas P. Watkins, Deputy Atty. Gen., argued, Boise, for respondent.

McDEVITT, Chief Justice.

## I.

### FACTS AND PROCEDURE

On September 28, 1990, Russell A. Hansen ("Hansen") and Jeff McAdam ("McAdam") were indicted on charges of racketeering, stemming from their participation in the growing and processing of marijuana around Dworshak Reservoir in 1988 and 1989. McAdam pled guilty to the charge on October 25, 1991. On January 6, 1992, Hansen moved to dismiss the indictment, arguing that the facts alleged are not sufficient to support a conviction on the charge of racketeering. Hansen's motion was supported by an affidavit, in which Hansen admitted the essential facts the State sought to prove at trial.

The facts stipulated in Hansen's affidavit explained the relevant activities of Hansen and others involved in the growing and processing large amounts of marijuana. According to the affidavit, Hansen, McAdam and Robert Moore ("Moore") mutually agreed to direct the marijuana growing operation. Moore provided financial backing and Hansen, McAdam, Moore and others provided labor, and the profits were to be split equally. The three men flew from California to Idaho in Hansen's airplane to locate appropriate sites for the operation in early 1988. During that same period, Hansen was growing marijuana seedlings at his vineyard in California. After selecting the site around Dworshak Reservoir to grow marijuana, Hansen McAdam and Moore purchased a houseboat for use in monitoring the marijuana crops around the reservoir. They then transported the marijuana seedlings and supplies from California to Idaho in a rented truck. They planted and cultivated marijuana in an area near the reservoir through the summer of 1988.

In order to process the marijuana, Hansen, McAdam, and Moore recruited and transported workers from Hansen's California vineyard to the Dworshak Reservoir area. The site used to process the marijuana was a trailer-house near Kamiah, Idaho. Hansen signed a lease for the trailer and Moore paid the rent. The processed marijuana was stored in a rented storage unit in Orofino, Idaho. In November 1988, Hansen transported the marijuana to Chico, California, where it was divided among the parties involved in the growing operation.

The following year, Hansen and McAdam returned to the same area for the same purpose. Hansen rented a house near the Kamiah, Idaho airport. Although Hansen paid rent on the house, McAdam was to reimburse him after the 1989 marijuana harvest. During the spring and summer of 1989, Hansen, McAdam, and Dave Flancy ("Flancy") planted and cultivated marijuana near Dworshak Reservoir in the same manner as the previous year. Flancy was one of the workers hired to process marijuana the previous year. In September 1989, the other workers from the prior year were again invited to help process the harvested marijuana. The workers were again transported to Idaho in Hansen's airplane.

Before the 1989 crop could be harvested, Hansen and the others became concerned about police surveillance. In order to provide a cover for their presence while monitoring the crops, they purchased hunting and fishing equipment. Eventually, Hansen and McAdam, fearing arrest, burned several garbage bags of marijuana leaves that had been stored at the house in Kamiah, and hired two of the processors to drive a rental truck containing Hansen's belongings from the Kamiah residence to his home in Chico, California.

Based on these facts, the district court issued a memorandum decision and order denying Hansen's motion. After the district court denied Hansen's motion to reconsider, Hansen changed his plea to a conditional plea of guilty, retaining his right to appeal the trial court's denial of his motion to dismiss under I.C.R. 11(a)(2).

The district court sentenced Hansen to the custody of the Idaho State Board of Corrections for a minimum period of four years, with a maximum period not to exceed ten years. The court further ordered that Hansen pay the county $70,000 in restitution for the costs of investigating and prosecuting the action against him.

On appeal, Hansen contends that the trial court erred when it denied his motion to dismiss, and challenges the constitutionality of the racketeering statute. Hansen also appeals the sentence imposed by the district court, claiming that the severity of his sentence, when compared with the sentences imposed on his co-defendants, violates the Equal Protection clause of the U.S. Constitution. Finally, Hansen argues that the applicable restitution statute did not grant the district court authority to order that restitution be paid to the county for the costs of investigating and prosecuting this case.

## II.

### STANDARD OF REVIEW

 Although this Court will not weigh facts stipulated to by the parties below, *Linn*

*v. North Idaho Dist. Medical Serv. Bureau, Inc.*, 102 Idaho 679, 688, 638 P.2d 876, 888 (1981), it is free to draw its own legal conclusions from those facts. *Ada County v. Roman Catholic Diocese*, 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). In order to draw such conclusions when ruling on a motion for dismissal, which is properly treated as though it was offered as a motion for a directed verdict of acquittal, both this Court and the district court below must determine whether the evidence is sufficient to sustain a conviction of the crime charged. *State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979). Hansen's challenge to the indictment therefore requires this Court to determine whether the facts before the district court were sufficient to sustain a conviction of the crime of racketeering. Hansen's challenge to the constitutionality of the racketeering act presents purely a question of law. *Harris v. Department of Health & Welfare*, 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1993). As such, this Court reviews the district court's ruling *de novo*. *Id.*

■ With regard to Hansen's challenge to the sentence imposed by the trial court, however, this Court's inquiry is whether the trial court abused its discretion. *State v. Araiza*, 124 Idaho 82, 95, 856 P.2d 872, 885 (1993) (applying *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991), *overruled on other grounds State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992)). For a sentence to constitute an abuse of the trial court's discretion, that sentence must be unreasonable in light of the stated goals of sentencing. *Id.*

### III.

### THERE IS SUFFICIENT EVIDENCE TO SUPPORT HANSEN'S CONVICTION OF THE CHARGE OF RACKETEERING

Under Idaho's Racketeering Act, I.C. § 18–7801 *et seq.*, it is unlawful to be "associ-ated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity." I.C. § 18–7804(c). The definition of "racketeering" includes violations of the Uniform Controlled Substances Act. I.C. § 18–7803(a)(20). On appeal, Hansen contends that the evidence is insufficient to establish the existence of an "enterprise" within the meaning of the Racketeering Act. We disagree.

The Racketeering Act defines "enterprise" as follows:

"Enterprise" means any sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or any group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities[.]

I.C. § 18–7803(c).

■ Although there are no Idaho cases addressing this issue, cases applying the federal racketeering act [1] have required the existence of three elements to establish an enterprise for racketeering purposes. Those elements are (1) a common or shared purpose; (2) continuity of structure and personnel; and (3) an ascertainable structure distinct from the inherent conduct of the pattern of racketeering activity itself. *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir.1987) (citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527 (1981)). Hansen argues that the evidence before the district court did not establish the existence of an enterprise independent from the predicate acts of racketeering under any of these three elements.

#### a. Common purpose.

■ Hansen contends that, although the participants had the common purpose of manufacturing marijuana during the summers of 1988 and 1989, they did not have a

---

1. The definition of "enterprise" in the federal racketeering act is similar to Idaho's definition, although it does not expressly include an illicit association in fact. The federal statute provides that the term " '[e]nterprise' includes any individual, partnership, corporation, association, or any other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The United States Supreme Court has interpreted this definition to include illicit association in fact enterprises. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

single, common interest from the time the first predicate act was committed in 1988 until the last predicate act was committed in 1989. Hansen provides no authority for the proposition that the State must prove an absolute focus of intent in order to prove that the participants shared a common purpose in the pattern of racketeering activity, and no federal court has ever so held. *See, e.g., Kragness,* 830 F.2d at 856 (common purpose element present where "[e]ach defendant shared the common purpose alleged in the indictment, to import, receive, conceal, buy, sell, and otherwise deal in narcotic and dangerous drugs, and each to some extent carried out this purpose.").

The language of I.C. § 18–7803(c) explicitly rejects this proposition by including sole proprietorships, partnerships, corporations, businesses, labor unions, associations and other legal entities within the definition of enterprise. Any enterprise other than an illicit association in fact is inherently interested in issues other than the acts of racketeering which it has allegedly participated in.

### b. Continuity of structure and personnel.

■ Continuity of structure requires that the enterprise be an ongoing organization whose members function as a continuing unit. *See Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528 (An association in fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."). In order to prove continuity of structure, the State must establish "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." *Kragness,* 830 F.2d at 586–87. Hansen asserts that, although the participants established a system for organizing and executing the operations of the group, because the group disbanded between the 1988 and 1989 growing seasons, the structure of that organization was not continuing.

The fact that there was a pause in the group's operations does not prove that the group's operations were not continuing. The facts presented to the district court through Hansen's affidavit established that Hansen, Moore, and McAdam mutually agreed to direct the marijuana growing operation. Moore provided financing for the operation and all three provided and supervised labor during the first growing season. Hansen and McAdam assumed the same roles during both years of the operation, and the second season was financed through an agreement between Hansen and McAdam that payment for expenses advanced by Hansen would be reimbursed after the marijuana was harvested. Both years laborers were recruited from Hansen's vineyard, and two of the laborers were employed in that capacity both years. The manner in which the workers were paid remained constant both years.

These facts are sufficient to establish "continuity of structure." The organizational structure, decision-making mechanism, and division of labor existed through most of two growing seasons. This is clearly not an "ad hoc" group of actors who temporarily banded together for a single act. *Kragness,* 830 F.2d at 587.

### c. Ascertainable structure distinct from the inherent conduct of the pattern of racketeering activity itself.

■ The final requirement to establish the existence of an enterprise under the *Kragness* standard is the existence of some structure that is separate from pattern of racketeering activity itself. Hansen contends that, because the group was formed solely for the purpose of cultivating and processing marijuana, it has no structure distinct from the predicate acts inherent to that purpose.

■ This inquiry does not require that the State prove that the group has organized for purposes wholly unrelated to the predicate acts of racketeering. Rather, the State must establish that the group is organized through conduct beyond that essential to the commission of the underlying predicate acts. *See United States v. Riccobene,* 709 F.2d 214, 223–24 (3d Cir.1983) ("The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to

satisfy the separate existence requirement."). As the United States Supreme Court explained in *Turkette*, if we were to accept a construction of the racketeering act excluding organizations that were created solely for the purpose of furthering an illicit purpose, the result would be unacceptable. That Court explained:

> Whole areas of organized criminal activity would be placed beyond the substantive reach of the enactment. For example, associations of persons engaged solely in loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs would be immune from prosecution under RICO so long as the association did not deviate from the criminal path.

452 U.S. at 589–90, 101 S.Ct. at 2532.

Hansen's affidavit presents a list of actions that, while undertaken in furtherance of the racketeering act violation, were not inherent to it. Transporting processors from California to Idaho in Hansen's airplane, purchasing a houseboat, leasing real property and storage space, dividing profits, creating a system through which all expenses were paid, purchasing hunting and fishing equipment to provide a "cover" for their activities around the reservoir, and transporting clones from California to Idaho were all actions that are not inherent to the alleged racketeering activity. These actions illustrate precisely the type of conduct unique to racketeering.

The evidence before the district court was sufficient to warrant a conviction of the charge of racketeering. We therefore conclude that the district court did not err by denying the motion to dismiss.

## IV.

### THE RACKETEERING ACT IS NOT CONSTITUTIONALLY VOID FOR VAGUENESS

■■■■ Hansen next asserts that Idaho's racketeering act is unconstitutionally vague. A statute that either compels or forbids an act violates the Due Process Clauses of the Idaho and United States Constitutions if people of common intelligence must necessarily guess at the meaning of the statute, and

differ as to its application. *State v. Marek*, 112 Idaho 860, 866, 736 P.2d 1314, 1320 (1987). Hansen argues that a reasonable person would not be aware that the acts alleged in the indictment constituted a "pattern of racketeering activity," or that the organization through which the acts were undertaken constituted an "enterprise."

■■■■ In order to determine whether a statute is unconstitutionally vague, the statute should not be evaluated in the abstract, but should be considered in reference to the particular conduct of the defendant challenging the statute. *Id.; State v. Carringer*, 95 Idaho 929, 930, 523 P.2d 532, 533 (1974).

The Racketeering Act defines a "pattern of racketeering activity" as:

> [E]ngaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one (1) of such incidents occurred after the effective date of this act and that the last of such incidents incurred within five (5) years after a prior incident of racketeering conduct.

I.C. § 18–7803(d). Controlled substance violations are included in the definition of "racketeering" through I.C. § 18–7803(a)(20). Hansen does not dispute the fact that the group with which he was involved committed at least two distinct, interrelated controlled substance violations within five years. Such conduct is facially prohibited by the plain meaning of I.C. §§ 18–7803(d) and 18–7803(a)(20).

The argument that Hansen could not have reasonably known that the organization through which these violations were committed was a racketeering enterprise is similarly without merit. The affidavit submitted in support of the motion to dismiss establishes that Hansen and a group of individuals formed an association in fact, with agreed methods of financing operations, distributing profits, and dividing labor. Reasonable people would not necessarily have to guess, and differ in their conclusions, as to whether this arrangement presents a "group of individuals

associated in fact, although not a legal entity" Under I.C. § 18–7803(c).

## V.

## HANSEN'S SENTENCE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE IDAHO AND UNITED STATES CONSTITUTIONS

■ The equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Article One, Section 13 of the Idaho Constitution require that similarly situated people receive the same benefits and burdens under the law. *Bon Appetit Gourmet Foods v. Dep't. of Employment*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989). Hansen claims that, because McAdam was convicted of the same conduct as Hansen, the disparity between the sentences imposed on McAdam and Hansen was a violation of Hansen's constitutional rights. Hansen does not argue that the sentence imposed by the district court was excessive or arbitrary, nor does he contend that the trial court based his sentence on improper considerations. Rather, Hansen asserts that, in light of the sentence imposed on McAdam, Hansen was denied the benefits of law extended to McAdam.

The disparity in sentences between one defendant and another defendant convicted of the same crime does not, in itself, establish an equal protection violation. The burden rests with Hansen to establish that the disparity between his sentence and that of McAdam was arbitrary or based on improper considerations. *State v. Griffin*, 122 Idaho 733, 741, 838 P.2d 862, 870 (1992). When determining the sentence that should be imposed, the issues considered by the district court included the need to protect society, the likelihood of Hansen committing a future crime, Hansen's flight to Mexico and Canada to avoid prosecution, and the role Hansen played in the enterprise. These were proper considerations upon which to determine Hansen's sentence, and the fact that McAdam's

sentence was different does not alter this fact. *Id.; State v. Seifart*, 100 Idaho 321, 324, 597 P.2d 44, 47 (1979) (rejecting equal protection challenge to disparity of sentences imposed on co-defendants); *cf. State v. Hoffman*, 123 Idaho 638, 649, 851 P.2d 934, 945 (1993) (imposition of death penalty not disproportionate where co-conspirator sentenced to life for same act).

## VI.

## THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THAT HANSEN PAY RESTITUTION TO THE COUNTY

■ I.C. § 37–2732(k), as it existed during the period relevant to this appeal,[2] provided restitution upon conviction of a felony violation under the controlled substances act for costs incurred by law enforcement agencies in investigating the violation. Hansen argues that he was not convicted of a felony violation under the controlled substances act, and therefore cannot be required to pay restitution to the county.

At all times relevant to this appeal, the basis for ordering restitution under I.C. § 37–2732(k) was limited to "conviction of a felony violation under this chapter." The statute that the district court could properly rely on when ordering restitution plainly and unambiguously limited such orders to cases where the defendant had been convicted of a felony violation under Title 37, Chapter 27. *See State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992) ("When a statute is unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted, and a reviewing court may not apply rules of construction.") (citations omitted). Hansen was not convicted under that Chapter. Because restitution was not an option available to the district court when sentencing Hansen, the district court abused its discretion by issuing such an order.

2. Idaho Code § 37–2732(k) was amended by 1993 Sess.Laws, Ch. 105 § 1 to include the phrase "or upon conviction of a felony pursuant to the 'racketeering act,' section 18–7804, Idaho

Code, or the money laundering and illegal investment provisions of section 18–8201, Idaho code[.]"

## VII.

## CONCLUSION

For the reasons stated above, Hansen's conviction on the charge of racketeering is affirmed. The order of restitution is vacated, and the remainder of Hansen's sentence is affirmed.

BISTLINE, JOHNSON and SILAK, JJ., and HART, Justice Pro Tem., concur.