10 P.3d 1285

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dana L. HAMMERSLEY,
Defendant–Appellant.**

No. 24902.

Supreme Court of Idaho,
Coeur d'Alene, April 2000 Term.

Sept. 8, 2000.

John M. Adams, Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d' Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz, argued.

SILAK, Justice.

## NATURE OF THE CASE

This appeal arises from the magistrate court's decision denying appellant Dana L. Hammersley's (Hammersley) motion to dismiss challenging the constitutionality of section 18–6409 of the Idaho Code.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

**A. Factual and Procedural Background**

On February 7, 1997, Hammersley drove to Lakeland Junior High to pick up her daughter, Cassandra, age 13. When Hammersley arrived, Cassandra was talking with her friend Nicole "Nikki" Goodwin (Goodwin). After Cassandra got into her mother's car, Hammersley yelled at Goodwin to "shut your fucking mouth, you bitch Nikki." In addition to Goodwin, two other youths, Lacy Johnson and Brandon March, age 13 and 14 respectively, were present during the incident. Goodwin filed a criminal complaint resulting in Hammersley being charged with disturbing the peace under I.C. § 18-6409. Hammersley filed a motion to dismiss, with the magistrate court, asserting violation of the First Amendment to the United States Constitution and Article I § 9 of the Idaho State Constitution.

The motion to dismiss was argued on the briefs, with the parties stipulating to the following facts:

1) On 05 February 1997

2) the defendant, Dana L. Hammersley

3) stated verbally and with a loud voice

4) "shut your fucking mouth, you bitch Nikki!"

5) in the presence of Nicole Goodwin, Brandon March, and Lacy Johnson

6) all of which are juveniles not yet eighteen (18) years of age.

The magistrate denied Hammersley's motion to dismiss. Hammersley agreed to a conditional plea under Idaho Criminal Rule 11, reserving the right to appeal the denial of her motion to dismiss. Hammersley then appealed to the district court, which affirmed the magistrate's decision. Hammersley now appeals the district court ruling to this Court.

## II.

### ISSUES ON APPEAL

The appellant presents the following issues on appeal:

1) Whether the magistrate erred in ruling that Hammersley's statement constituted "fighting words" and is therefore, not constitutionally protected.

2) Whether the magistrate erred in ruling that I.C. § 18-6409 is not vague or overbroad as applied.

## III.

### STANDARD OF REVIEW

When we review the decision of a magistrate following an intermediate appeal to the district court, we independently examine the proceedings in the magistrate division while giving due consideration, but not deference, to the district court's appellate decision. *See State v. Salsbury*, 129 Idaho 307, 308, 924 P.2d 208, 209 (1996); *Ireland v. Ireland*, 123 Idaho 955, 957-58, 855 P.2d 40, 42-43 (1993).

This Court reviews a motion to dismiss based on an abuse of discretion standard. *See State v. Pratt*, 125 Idaho 546, 556, 873 P.2d 800, 810 (1993). However, when this Court considers a claim contesting the constitutionality of a statute it involves a question of law, therefore, we review the trial court's ruling *de novo*. *See State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Further, we review the magistrate's ruling *de novo* because the parties had stipulated to the facts leaving only question of law to be decided. *See id.* 132 Idaho at 197, 969 P.2d at 246; *State v. Hansen*, 125 Idaho 927, 930, 877 P.2d 898, 901 (1994); *Sun Valley Co. v. City of Sun Valley*, 109 Idaho 424, 428, 708 P.2d 147, 151 (1985).

## IV.

### ANALYSIS

**A. The Magistrate Court Did Not Err In Ruling Dana Hammersley's Statement Constituted "Fighting Words" And Is Therefore Not Constitutionally Protected.**

Hammersley asserts that, as it has been applied to her, I.C. § 18-6409 violates

her freedom of speech as protected by the First Amendment to the U.S. Constitution and Article I, section 9 of the Idaho Constitution. In denying her motion to dismiss, the magistrate court ruled that Hammersley's speech was not constitutionally protected by either the United States or Idaho Constitution because her speech fell within the "fighting words" exception to free speech and was thereby subject to regulation. We agree.

Section 18–6409 of the Idaho Code provides in relevant part:

**Disturbing the peace.** – Every person who maliciously and willfully . . . uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

I.C. § 18–6409 (emphasis in original).

The First Amendment to the U.S. Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. CONST. amend. I.

Those protections of free speech afforded by the First Amendment are made applicable to state actions by operation of the Fourteen Amendment. This Court has previously held that Art. I, § 9 of the Idaho Constitution provides for protection of freedoms substantially similar to those of the First Amendment to the U.S. Constitution. *See In re Contempt of Wright,* 108 Idaho 418, 423, 700 P.2d 40, 45 (1985). Article I, section 9 of the Idaho Constitution provides:

Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty.

IDAHO CONST. art. I, § 9.

■ In most instances, there exists a strong presumption of the validity of a statute or ordinance. *See Cobb,* 132 Idaho at 197, 969 P.2d at 246. The First Amendment generally prevents government from proscribing speech or expressive conduct because of disapproval of the ideas expressed.

*See R.A.V. v. St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305, 317 (1992). As a result, most content-based regulations on speech are presumptively invalid. *See id.* However, while these constitutional provisions seek to protect individuals from state regulation of speech, they have never been thought to give absolute protection to every individual to speak whenever or wherever he or she pleases, or to use any form of address in any circumstances that he or she chooses. *See Cohen v. California,* 403 U.S. 15, 19, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 290 (1971). Rather, states are free to ban simple use of what have been termed "fighting words" without being required to demonstrate additional justifying circumstances. *See id.* at 20, 91 S.Ct. at 1785–1786, 29 L.Ed.2d at 291. These so-called "fighting words" have been described as "those personally abusive epithets which, when addressed to an ordinary citizen, are inherently likely to provoke violent reaction." *Id.* (citing *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)).

■ The rationale behind the "fighting words" exception is that certain words or phrases, when directed toward another, may be regulated consistent with the First Amendment because of their constitutionally proscribable content. *See R.A.V.,* 505 U.S. at 383, 112 S.Ct. at 2543, 120 L.Ed.2d at 317. Therefore, the exclusion of "fighting words" from the scope of the First Amendment simply means that the unprotected features of the words are essentially a non-speech element of communication subject to state regulation because they do not constitute an *essential* part of any expression of ideas. *See id.* at 385, 112 S.Ct. at 2543, 120 L.Ed.2d at 319.

Here, it is difficult to conceive how Hammersley's statement to Goodwin contained an essential element of the expression of ideas, entitled to constitutional protection. Rather, the nature and circumstances surrounding Hammersley's statement appear to fall well within those areas of speech previously recognized as unprotected by the First Amendment.

Hammersley's statement to Goodwin neither contained nor expressed any message of social or political importance. The comment was not made generally, but was directed toward a specific individual with the sole purpose of being derogatory and abusive. Such personal abuse cannot be reasonably interpreted as the communication of information or opinion safeguarded by the Constitution. *See Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035.

■ In addition to falling generally outside the scope of constitutional protections, Hammersley's statement fits within the well-recognized "fighting words" exception to free speech since, under the circumstances, it was likely to incite or provoke a reasonable person to a violent reaction. Hammersley asserts the statement is not within the "fighting words" exception because escalation to a violent encounter was physically impossible given the fact that Goodwin was on the sidewalk and Hammersley was in her car. However, the fact that Hammersley now asserts that Goodwin was not physically capable of retaliation does not make the statement any more or less protected. On the contrary, it is entirely possible that Goodwin could have been incited to retaliate under the circumstances. The physical characteristics of the encounter did not foreclose the possibility of Goodwin throwing a rock or other projectile, or resorting to reciprocal verbal assaults. As applied, I.C. § 18–6409 sought to proscribe just such conduct in preventing a breach of the peace.

Accordingly, we hold that the application of I.C. § 18–6409 to Hammersley did not violate her constitutional protections to freedom of speech.

### B. The Magistrate Court Did Not Err In Determining That I.C. § 18–6409 Is Not Vague Or Overbroad As Applied To Hammersley.

Hammersley asserts that I.C. § 18–6409 is unconstitutionally overbroad as applied to her and that the statute is vague because it fails to give adequate notice to those who are subject to it and provides insufficient guidelines to prevent arbitrary and discriminatory enforcement. We disagree.

The concepts of vagueness and over breadth have been traditionally viewed as logically related and similar. *See Cobb,* 132 Idaho at 198 n. 2, 969 P.2d at 247 n. 2. In Idaho, challenges to the constitutionality of a statute based on these two concepts have been combined in a two-part test. To determine whether a statute or ordinance is impermissibly overbroad or vague, the Court in *State v. Bitt,* 118 Idaho 584, 798 P.2d 43 (1990), developed the following analysis:

First, the court must ask whether the ordinance regulates constitutionally protected conduct. If the answer to this first step is in the affirmative, then the next step asks whether the ordinance precludes a significant amount of the constitutionally protected conduct. If the answer to this step is also in the affirmative, then the ordinance is quite likely overbroad and must be restricted in its application or rewritten. But if the ordinance does not preclude a significant amount of such conduct, then the next and last step is to ask whether (a) the ordinance gives notice to those who are subject to it, and (b) whether the ordinance contains guidelines and imposes sufficient discretion on those who must enforce the ordinance.

*Bitt,* 118 Idaho at 587–588, 798 P.2d at 46–47. This test first addresses over breadth, then goes on to analyze vagueness.

### 1. I.C. § 18–6409 is not overbroad as applied to Hammersley.

■ The first step in determining whether I.C. § 18–6409 is overbroad is to determine whether the ordinance regulates constitutionally protected conduct. The statute provides in relevant part:

**Disturbing the peace.** – Every person who maliciously and willfully ... uses vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

I.C. § 18–6409. On its face, this statute regulates speech; conduct protected by the U.S. and Idaho Constitutions. Because Hammersley has not asserted that I.C. § 18–6409 is facially overbroad, the second part of

our analysis need only address whether the statute precludes a significant amount of Hammersley's speech.

By its very terms, I.C. § 18–6409 is self-limiting in its application and does not infringe upon a significant amount of Hammersley's speech. The first sentence of I.C. § 18–6409 requires the specific intent that the conduct regulated be willful and malicious. As defined by section 18–101 of the Idaho Code, "willfully" means a purpose or willingness to commit the act or make the omission referred to. *See* I.C. § 18–101(1). "Maliciously" imports a wish to vex, annoy, or injure another person, or an intent to do a wrongful act. *See* I.C. § 18–101(4). Through its specific intent requirement that the regulated speech be malicious, I.C. § 18–6409 limits its application to those circumstances where the speech is intended to "vex, annoy, or injure another person." Such communications, as previously discussed, do not come within the realm of protections afforded by either the U.S. or Idaho Constitutions. We conclude that Hammersley's conduct falls squarely within the specific intent requirement of I.C. § 18–6409 and therefore her conduct is not constitutionally protected. Accordingly, we hold that as applied to Hammersley, I.C. § 18–6409 is not overbroad.

## 2. I.C. § 18–6409 is not unconstitutionally vague.

The second part of our analysis addresses the issue of vagueness. Where a statute does not reach constitutionally protected conduct and therefore satisfies over breadth standards, it may nevertheless be challenged on its face as unduly vague. *See Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362, 370–371 (1982). To be successful in the challenge, the complainant must demonstrate the law is impermissibly vague in all of its applications. *See id.* The U.S. Supreme Court has explained the concept of vagueness by stating:

> [T]he vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and

differ as to its application." ... [T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*U.S. v. Lanier,* 520 U.S. 259, 266–267, 117 S.Ct. 1219, 1225–1226, 137 L.Ed.2d 432, 137 L.Ed.2d at 442–443 (1997) (citations omitted).

Therefore, our next question asks whether the statute "gives notice to those who are subject to it." *Bitt,* 118 at 588, 798 P.2d at 47. As proof of a lack of notice, Hammersley asserts that the words "vulgar, profane, and indecent" used in I.C. § 18–6409 are not statutorily defined and that definitions found in Black's Law Dictionary and Webster's Dictionary show that the words do not give a person of average intelligence fair notice of what is proscribed.

The constitutional standards underlying the vagueness doctrine have never required that every word used in a criminal statute be statutorily defined. This Court has stated, "[w]here the legislature has not provided a definition, terms in a statute are given their commonly understood, everyday meanings." *Ada County Assessor v. Roman Catholic Diocese,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). Courts commonly construe statutory language by applying the legal maxim of *noscitur a sociis,* noting that a word is known by the company it keeps. This method of statutory construction is often wisely applied where a word is capable of many meanings. *See Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859, 6 L.Ed.2d at 862–863 (1961); *State v. Richards,* 127 Idaho 31, 38, 896 P.2d 357, 364 (Ct.App.1995). Applying this method of construction, only those commonly understood meanings, which are consistent with the context given, are to be considered in determining the meaning of a term undefined by statute. *See generally, Richards,* 127 Idaho at 38, 896 P.2d at 364.

The definitional crisis asserted by Hammersley is unpersuasive. Read in the context of I.C. § 18–6409, the common meaning of "vulgar" is "lacking in cultivation, perception, or taste." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2566 (unabridged,

1967). "Profane" commonly means "to violate or treat with abuse, irreverence, obloquy, or contempt; ... indulging in cursing or vituperation; ... marked by insulting or perverted utterance." *Id.* at 1810. Finally, "indecent" is commonly understood as being "contrary to what the nature of things or what circumstances would dictate as right or expected or appropriate; ... hardly suitable; ... not conforming to generally accepted standards of morality; ... tending toward or being in fact something generally viewed as morally indelicate or improper or offensive." *Id.* at 1147.

Given these commonly used meanings, we conclude a person of common intelligence would understand that "vulgar, profane, or indecent" would include a statement like that made by Hammersley. The words used toward Goodwin are commonly known as cursing or vituperation, abusive language, and generally viewed as improper or offensive. Therefore, we hold that I.C. § 18–6409 provided adequate notice to Hammersley that such conduct was restricted.

Finally, we must determine "whether the ordinance contains guidelines and imposes sufficient discretion on those who must enforce the ordinance." *Bitt*, 118 at 588, 798 P.2d at 47. The statute not only gives adequate notice to those who are subject to it, but also to those who enforce it. The conduct proscribed is sufficiently defined. The common use of the words comprising the statute along with the specific intent requirement of malice provide sufficient guidance and discretion to those enforcing to prevent arbitrary and discriminatory enforcement. Furthermore, Hammersley has not shown "the law is impermissibly vague in all of its applications" as required under *Hoffman Estates*. *Hoffman Estates*, 455 U.S. at 497, 102 S.Ct. at 1192, 71 L.Ed.2d at 370–371.

Accordingly, we hold I.C. § 18–6409 is not unconstitutionally vague.

### V.

### CONCLUSION

We hold: 1) Hammersley's statement fell outside the scope of speech protected by the United States and Idaho Constitutions; 2)

I.C. § 18–6409 is not overbroad as applied to Hammersley; 3) I.C. § 18–6409 is not unconstitutionally vague; and 4) I.C. § 18–6409 gives adequate notice of the conduct proscribed as well as adequate guidance to those charged with enforcing it. The order of the magistrate court is affirmed.

Chief Justice TROUT, Justices SCHROEDER and WALTERS concur.

Justice KIDWELL, dissenting.

I do not believe it was the intent of the legislature to criminalize speech, even when it is vulgar or distasteful, unless the words pose imminent danger or cause potential violence. The words and facts of this case do not rise to the standards required to set aside freedom of speech guaranteed by the Idaho and U.S. Constitutions. Therefore, I respectfully dissent.

Fighting words are those that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942). They have a "*direct* tendency to cause acts of violence by the persons to whom, individually, the remark is addressed." *Id.* at 573, 62 S.Ct. at 770, 86 L.Ed. at 1036 (emphasis added). While I obviously do not condone such vulgar language, I cannot believe that in this age the average teenager would react with physical violence to Hammersley's ill-considered insult. "[W]e cannot ignore this particular epithet's common appearance in both the written and spoken language of our contemporary society, and the resultant negation of its inflammatory nature." *Cavazos v. State*, 455 N.E.2d 618, 620 (Ind.Ct.App. 1983). The epithet used by Hammersley is not acceptable in polite society; nevertheless, it is an epithet "which reasonable persons would agree would not provoke ordinary citizens to violent action." *Id.*

Many state courts that have considered the issue have concluded that use of an obscenity such as the "f-word" as a direct personal insult does not, by itself, constitute fighting words. Although use of the word may incite anger, it is not by itself calculated to provoke a physical retaliation and breach

of the peace. Rather, use of extreme profanity constitutes fighting words only when an additional element in the situation (such as physical proximity, screaming, prolonged repetition of the language, or aggressive gestures) suggests that violence is imminent.

An interesting and colorful array of cases emphasizes that words alone are not a proper basis for a criminal charge. *Compare State v. Miller*, 110 Ohio App.3d 159, 673 N.E.2d 934, 935, 937 (1996) (reversing disorderly conduct conviction for man who made statements to neighbor while separated by fence and at least thirty feet); *In re Welfare of S.L.J.*, 263 N.W.2d 412, 415, 419–20 (Minn. 1978) (reversing disorderly conduct conviction for teenage girl who made comments to police from fifteen feet away); *R.I.T. v. State*, 675 So.2d 97, 98 (Ala.Crim.App.1995) (reversing disorderly conduct conviction for statement juvenile made to sheriff as he walked away from scene), *with State v. James M.*, 111 N.M. 473, 806 P.2d 1063, 1065–66 (App.1990) (upholding disorderly conduct conviction when juvenile was yelling at a man during a loud argument, standing close to the man, violently flailing and pointing, and police officer reasonably thought fight would ensue); *State v. Wood*, 112 Ohio App.3d 621, 679 N.E.2d 735, 737, 740–41 (1996) (upholding disorderly conduct conviction for man who approached police officers and used loud abusive language against them for several minutes); *City of Billings v. Batten*, 218 Mont. 64, 705 P.2d 1120, 1124–25 (1985) (upholding disorderly conduct conviction of man yelling for several minutes accompanied by taunts of "fight me, hit me").

In this case, according to Goodwin's testimony, Hammersley yelled one obscenity at her, and did that only after Cassandra got into the car. Nothing in the record showed any violence was imminent in the situation. Hammersley did not physically confront Goodwin, did not yell at her repeatedly, did not make any aggressive gestures, and did not in any other way provoke a physical retaliation.

The record shows that Goodwin considered the insult for over a month before filing charges against Hammersley. I would submit that such behavior shows that the vulgar term used by Hammersley would not have a direct tendency to cause acts of violence when addressed to the average teenager. Therefore, I believe it is apparent that Hammersley's language does not constitute fighting words and is constitutionally protected.