56 P.3d 775

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Patrick Sheldon SUITER, Defendant–Appellant.**

No. 28115.

Supreme Court of Idaho, Boise, September 2002 Term.

Oct. 28, 2002.

Wiebe & Fouser, P.A., Canyon County Public Defender, Caldwell, for appellant. Thomas A. Sullivan argued.

Nevin, Herzfeld, Benjamin & McKay, L.L.P., Boise, for amicus Idaho Association of Criminal Defense Lawyers and American Civil Liberties Union of Idaho. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Idaho Attorney General, Boise, for respondent. Lori A. Fleming argued.

## ON REVIEW

KIDWELL, Justice.

Suiter was convicted of disturbing the peace following a jury trial. Suiter appeals his conviction on the grounds that his conviction violates his freedom of speech pursuant to the First Amendment of the United States Constitution.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On April 3, 1998, Suiter went to the Canyon County Courthouse and spoke to a detective in the records division about a fraudulent check case in which one of Suiter's friends was the victim. Suiter explained that he was acting at his friend's request and as his agent. The detective responded that without some sort of verification from the crime victim, Suiter was unauthorized to act on the victim's behalf, and the detective could not take a complaint or assist Suiter in an investigation of the alleged check fraud. Suiter became frustrated with the officer's responses to his inquiries. As the conversation progressed, Suiter became agitated and critical of the sheriff's office. The detective told Suiter that he was not going to listen to criticism. Subsequently, the detective asked Suiter to calm down. At that point, Suiter said "Hey, fuck off," (Suiter's statement or Suiter's speech) and turned to leave. Suiter was then stopped by other officers and cited for disturbing the peace.

Those who heard the profanity included another sheriff's deputy, two clerks in the records division of the sheriff's office, and two civilian bystanders. The civilians were a woman (Villireal) and her nineteen-year-old daughter. The woman testified that she was not angered by what she heard but was

surprised to hear such language in the court-house. She said that Suiter's language didn't really bother her. The daughter was also surprised, but not agitated, by hearing the "f-word" in the courthouse. Personnel of the sheriff's office who overheard the conversation said Suiter's agitated profanity disrupted their work or disrupted their peace and quiet. The witnesses described Suiter's voice as "loud," "not combative," "fairly loud," "not real loud," "seemed to raise a little bit," or it "sounded like he was upset" when he uttered the vulgarity; no one characterized it as shouting, or screaming.

Prior to trial, Suiter moved to dismiss the case. Suiter failed to appear at the hearing on his motion to dismiss and the magistrate denied the motion. The case proceeded to a jury trial. During the trial, Suiter again moved to dismiss the case. The magistrate also denied this motion. A jury found Suiter guilty of disturbing the peace.

Suiter appealed to the district court on the grounds that his conviction violated his First Amendment right to freedom of speech. The district court affirmed the judgment of conviction. Suiter again appealed, and the Court of Appeals affirmed the judgment of conviction. Following the Court of Appeal's decision, Suiter timely filed, and this Court granted, a petition for review.

## II.

## STANDARD OF REVIEW

When reviewing a decision of a magistrate following intermediate appeals, this Court independently examines the proceedings in the magistrate division and gives "due consideration, but not deference, to the [intermediate] court's appellate decision." *State v. Hammersley,* 134 Idaho 816, 818, 10 P.3d 1285, 1287 (2000) (citing *State v. Salsbury,* 129 Idaho 307, 308, 924 P.2d 208, 209 (1996); *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993)).

A claim contesting the constitutionality of a statute presents a question of law warranting de novo review of the trial court's

ruling. *See State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998).

## III.

## ANALYSIS

The conflict of constitutionally protected speech and the protection provided our citizenry by criminal statutes demands a judicial balancing act. Here the balance tips toward freedom of speech.

### A. Suiter's Conviction Violated His First Amendment Rights.

Suiter argues that he was convicted solely on the grounds of the content of his statement to the detective and that his statement constituted protected speech pursuant to the First Amendment. The state contends that Suiter's statement was not the basis for his conviction. Rather, the foundation for Suiter's conviction was loud and boisterous conduct. Furthermore, even if Suiter's conviction did rest on the content of his statement, it would not be wrongful because Suiter's statement falls into the category of fighting words that do not receive First Amendment protection.

### 1. Suiter's Statement Is Protected Speech.

The First Amendment states in pertinent part that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I. The freedoms preserved by the First Amendment apply to the states through the 14th Amendment. *Hammersley,* 134 Idaho at 819, 10 P.3d at 1288. A criminal conviction cannot be based on the content of constitutionally protected speech. *Cohen v. California,* 403 U.S. 15, 18–19, 91 S.Ct. 1780, 1784–85, 29 L.Ed.2d 284, 289–90 (1971). States may, however, punish the use of words within narrowly limited classes of speech such as "fighting words." *Id.* at 20, 91 S.Ct. at 1785, 29 L.Ed.2d at 291.

"Fighting words" are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Id.;*

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Fighting words "are essentially a non-speech element of communication . . . subject to state regulation because they do not constitute an *essential* part of any expression of ideas." *Hammersley*, 134 Idaho at 819, 10 P.3d at 1288 (citations omitted).

Though boorish, impolite, and offensive, Suiter's statement is protected speech not subject to the "fighting words" exception to the First Amendment. While Suiter's statement was vulgar and impolite, the phrase is relatively common. Also, unlike other vulgar phrases containing the same expletive, Suiter's statement cannot be characterized as a personally abusive epithet because it does not demean or characterize a person to whom it is directed. Consequently, Suiter's statement is unlikely to provoke a violent reaction when addressed to the ordinary citizen. Therefore, Suiter's statement does not fall within the fighting words exception to First Amendment protection.

## 2. The Record Does Not Disclose Whether Protected Speech Played A Role In Securing Suiter's Conviction.

 To convict one for disturbing the peace pursuant to I.C. § 18–6409, the state must prove beyond a reasonable doubt that one "maliciously and wilfully [sic] disturb[ed] the peace or quiet of any neighborhood, family or person" in one of five manners:

by [1] loud or unusual noise, or by [2] tumultuous or offensive conduct, or by [3] threatening, traducing, quarreling, challenging to fight or fighting, or [4] fir[ing] any gun or pistol, or [5] use[ing] any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner . . . .

*Id.* (bracketed numbering added).[1] The evidence at trial could only potentially support Suiter's conviction on the ground that he disturbed the peace "by loud or unusual noise, or by tumultuous or offensive conduct."

The trial court instructed the jury that " '[m]alice' and 'maliciously' mean the desire to annoy or injure another or the intent to do a wrongful act." The jury was not instructed that Suiter's statement was protected speech and that its content could not be considered in determining whether he acted maliciously, disturbed the peace, made an unusual noise, or whether his conduct was offensive.

The state was allowed to argue that the jury should convict Suiter because of "the *language* coupled with the actions of Mr. Suiter, disrupting these people, disrupting the courthouse, an official place of business. . . . And that's *evidenced by the type of language he used* . . . . The *offensiveness of this language* directed at Detective Lewis, and its impact on other individuals and his conduct . . . ."

The state adduced evidence at trial that the *words* used by Suiter disturbed witness' peace. In fact, the evidence at trial tended to show that others in the vicinity of the detective and Suiter were oblivious to the conversation between them until Suiter made his boorish statement. One witness testified that the only thing that disturbed her was Suiter's use of the expletive in question. In addition to the evidence and argument in the record referring to the content of Suiter's statement, there is also evidence in the record that creates a jury question regarding whether Suiter disturbed the peace either "by loud or unusual noise or by tumultuous or offensive conduct" without regard to the content of his speech. I.C. § 18–6409.

In closing, the state argued that the evidence showed that the "witnesses . . . had

1. The trial court instructed the jury that:
 In order for . . . Suiter [ ] to be found guilty of the crime of Disturbing the Peace the State must prove each of the following elements beyond a reasonable doubt:
 1. Every person who maliciously and willfully
 2. disturbs the peace of any neighborhood, family or person;
 3. by loud or unusual noise or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children;
 4. in a loud and boisterous manner;
 5. is guilty of a misdemeanor.

not ... heard this *type of language* being used in public in these circumstances. And when you couple that with this government office ... people trying to conduct business ... the state would submit that Suiter ... did disturb the peace ...." The state also argues that "[t]he bare language itself ... is not disturbing the peace. What is disturbing the peace is the offensive conduct, *the use of the F word* in that phrase directed to [the] Detective."

It was error for the court to allow the state to argue that the content of Suiter's protected speech could, even in part, support a conviction for disturbing the peace. Additionally, even in the absence of the state's arguments regarding the content of Suiter's statement, the court erred by failing to instruct the jury that it could not consider the content of Suiter's protected speech when determining his guilt or innocence.

**3. It Was Reversible Error For The Court To Allow The State To Argue For Suiter's Conviction Based On The Content Of His Speech And Not To Instruct The Jury That The Content Of Suiter's Statement Could Not Be Considered In Determining His Guilt Or Innocence.**

 I.C.R. 52 states that "[a]ny error ... which does not affect substantial rights shall be disregarded." In order to determine whether an error is harmless or reversible, we "must inquire whether it appears, beyond a reasonable doubt, that there was no reasonable possibility that the error contributed to [the] conviction." *State v. Trevino,* 132 Idaho 888, 895, 980 P.2d 552, 559 (1999) (citing *State v. Roy,* 127 Idaho 228, 231, 899 P.2d 441, 444 (1995)).

Based on the jury instructions and trial transcript, it is impossible to determine whether the jury actually considered the content of Suiter's statement in determining whether he was malicious, whether he disturbed the peace, or whether he did so "by loud or unusual noise or by tumultuous or offensive conduct." I.C. § 18–6409. The state did invite the jury to consider the content of Suiter's statement and it is likely the jury did consider the content of Suiter's statement. Moreover, the jury instructions did nothing to prevent the jury from considering the content of Suiter's statement. In light of these errors, we cannot say, "beyond a reasonable doubt, that there was no reasonable possibility that the error[s] contributed to [Suiter's] conviction." *Trevino,* 132 Idaho at 895, 980 P.2d at 559. Therefore, we vacate Suiter's conviction.

There is sufficient evidence in the record to create a jury question regarding whether Suiter disturbed the peace "by loud or unusual noise or by tumultuous or offensive conduct" without regard for the content of his statement. I.C. § 18–6409. Therefore, this case is remanded for further proceedings consistent with this opinion.

## IV.

## CONCLUSION

Suiter's statement is protected speech pursuant to the First Amendment. The trial court erred by allowing the state to argue that the content of Suiter's statement could be considered evidence of whether he committed the crime alleged. The trial court also erred by failing to instruct the jury that Suiter's statement was protected speech, the content of which could not be considered in determining whether Suiter committed the alleged crime. We cannot say that these errors did not contribute to Suiter's conviction. Therefore, we vacate Suiter's conviction and remand this case for proceedings consistent with this opinion.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, AND EISMANN concur.

Justice EISMANN, SPECIALLY CONCURRING.

I concur in the majority opinion, but write separately to further address one issue.

Although the language chosen by Mr. Suiter is certainly distasteful, crude, and offensive, under the First Amendment the State cannot excise this one particular scurrilous epithet from public use. *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). As stated by the United States

Supreme Court in *Cohen,* "Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us.... [W]e cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process." *Id.* at 25–26, 91 S.Ct. at 1788, 29 L.Ed.2d at 294.

In this case, the trial court instructed the jury as follows:

> In order for the defendant, Patrick Sheldon Suiter, to be found guilty of the crime of Disturbing the Peace the State must prove each of the following elements beyond a reasonable doubt:
>
> 1. Every person who maliciously and willfully
>
> 2. disturbs the peace or quiet of any neighborhood, family or person;
>
> 3. by loud or unusual noise or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children;
>
> 4. in a loud and boisterous manner;
>
> 5. is guilty of a misdemeanor.

Although the State argues that Suiter's conviction can be upheld because he disturbed the peace by speech that was loud and boisterous, the jury instructions required the jury to find "each of the following elements beyond a reasonable doubt." Thus, in order to convict Suiter the jury was required to find both that he was loud and boisterous and that he engaged in conduct described in element number three. Thus, the jury could have convicted Suiter because it found that his speech was "offensive conduct." [2]

When a criminal conviction is based upon speech protected by the First Amendment, the conviction cannot stand if it could have been based, in part, upon a finding that the speech was offensive, vulgar, profane, or indecent. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Therefore, if this case is retried upon remand, the jury instructions must be drafted so that the jury cannot consider whether the language chosen by Mr. Suiter was offensive, vulgar, profane, or indecent.

---

**2.** There was no evidence that Suiter engaged in conduct that could be described as threatening, traducing, challenging to fight or fighting, or that he fired any gun or pistol. Likewise, there were no children (persons under eighteen years of age) present. The trial court should not have included jury instructions regarding alternative elements that were not supported by evidence.