88 P.3d 704

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joseph Martin POE, Sr., Defendant–Appellant.**

No. 28404.

Supreme Court of Idaho, Coeur d'Alene, October 2003 Term.

March 4, 2004.

Rehearing Denied April 27, 2004.

Douglas P. Phelps, Spokane, Washington, for appellant. Douglas P. Phelps argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lori A. Fleming argued.

EISMANN, Justice.

This is an appeal from a conviction for disturbing the peace in which the appellant alleges, among other things, that Idaho Code § 18–6409 is unconstitutionally overbroad. We affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

On September 7, 1999, the defendant-appellant Joseph Poe was charged with disturbing the peace in violation of Idaho Code § 18–6409 based upon statements he made to a thirteen-year-old boy who had come with his mother to Poe's home to pick up another child.[1] The jury found Poe guilty, and the district court upheld his conviction on appeal. He then appealed to this Court.

## II. ISSUES ON APPEAL

A. Is Idaho Code § 18–6409 unconstitutionally overbroad on its face?

B. Is Idaho Code § 18–6409 unconstitutionally vague?

C. Did the prosecution in this case violate Poe's right to privacy?

D. Did the trial court err by admitting hearsay statements into evidence under the excited utterance exception to the hearsay rule?

E. Did the trial court err in instructing the jury?

F. Did the State fail to allege an essential element of the offense in the complaint?

G. Was there a conflict in the jury instructions that entitles Poe to a new trial?

---

1. We have not provided greater detail as to what Poe said for two reasons. First, he challenges his conviction on the ground that the statute was overly broad on its face and not upon the additional ground that his conviction infringed upon his own First Amendment rights. That challenge simply presents a legal issue that is resolved by examining the statute itself, and the actual words he spoke are irrelevant to the resolution of that legal issue. Second, because the victim was a thirteen-year-old boy, we have provided no further detail than necessary in order to protect him, to the extent we can, from further embarrassment.

## III. ANALYSIS

### A. Is Idaho Code § 18–6409 Unconstitutionally Overbroad on its Face?

In *State v. Hammersley,* 134 Idaho 816, 10 P.3d 1285 (2000), we addressed the issue of whether Idaho Code § 18–6409 was unconstitutionally overbroad as applied to the defendant in that particular case. We did not address the issue of whether the statute is unconstitutionally overbroad on its face. Although the dissent argues that *Hammersley* did consider the facial overbreadth of § 18–6409, that assertion is inconsistent with what *Hammersley* said it decided. In the subtitle to its discussion, *Hammersley* identified the issue as "1. I.C. § 18–6409 is not overbroad as applied to *Hammersley.*" 134 Idaho at 820, 10 P.3d at 1289. In its analysis, the Court said, "Because Hammersley has not asserted that I.C. § 18–6409 is facially overbroad, the second part of our analysis need only address whether the statute precludes a significant amount of Hammersley's speech." 134 Idaho at 820–21, 10 P.3d at 1289–90. In concluding the overbreadth discussion, the Court stated its holding as follows: "Accordingly, we hold that as applied to Hammersley, I.C. § 18–6409 is not overbroad." 134 Idaho at 821, 10 P.3d at 1290. At the conclusion of the opinion, when summarizing what it had done, the Court in *Hammersley* likewise did not mention the facial overbreadth of the statute as an issue that it decided. In its conclusion, the Court stated:

> We hold: 1) Hammersley's statement fell outside the scope of speech protected by the United States and Idaho Constitutions; 2) I.C. § 18–6409 is not overbroad as applied to Hammersley; 3) I.C. § 18–6409 is not unconstitutionally vague; and 4) I.C. § 18–6409 gives adequate notice of the conduct proscribed as well as adequate guidance to those charged with enforcing it. The order of the magistrate court is affirmed.

134 Idaho at 822, 10 P.3d at 1291. Thus, it is clear from its opinion that *Hammersley* did not address the facial overbreadth of Idaho Code § 18–6409.

Even if we were to read *Hammersley* as deciding an issue it said it was not deciding, there is a more basic reason why *Hammers-*ley is not authority for determining whether Idaho Code § 18–6409 is overly broad on its face. The United States Supreme Court utilizes two separate standards when determining the facial constitutionality of a statute under the First Amendment. If the statute punishes only spoken words, it can withstand an attack upon its facial constitutionality "only if, as authoritatively construed by the [state appellate] courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments." *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413 (1972). However, the function of facial overbreadth "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick v. Oklahoma,* 413 U.S. 601, 614, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 841 (1973). If the statute proscribes conduct, not merely spoken words, that may infringe upon First Amendment rights, such as expressive conduct, rights of association, or regulations on the time, place, and manner of expressive or communicative conduct, the Supreme Court uses a different standard when evaluating whether the statute is overly broad. "[P]articularly where conduct and not merely speech is involved, we [the United States Supreme Court] believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*

■■■ With respect to those parts of Idaho Code § 18–6409 that proscribe only spoken words, the statute can withstand a challenge to its facial constitutionality "only if, as authoritatively construed by [this Court], it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments." *Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413 (1972). *Hammersley* did not apply or even mention that standard, however. Rather, when ad-

dressing whether § 18–6409 was overly broad as applied to Hammersley's speech, it stated, "[O]ur analysis need only address whether the statute precludes a significant amount of Hammersley's speech." 134 Idaho at 820–21, 10 P.3d at 1289–90. That standard is only appropriate when considering a facial challenge to those portions of the statute that proscribe expressive conduct. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Thus, because *Hammersley* did not use the standard prescribed by the United States Supreme Court for evaluating a facial challenge to a statute that proscribes only spoken words, *Hammersley* cannot be authority for a challenge to the facial overbreadth of those portions of Idaho Code § 18–6409 that proscribe only spoken words.

■ The standard used by *Hammersley* came from *State v. Bitt,* 118 Idaho 584, 798 P.2d 43 (1990), which did not even involve a facial challenge to a statute on the ground that it was overly broad under the First Amendment. Rather, in *Bitt* this Court struck down a loitering ordinance under the Due Process Clause of the Fourteenth Amendment on the ground that it was unconstitutionally vague. That standard is not even the appropriate one for an as-applied challenge. If a statute as applied to a particular defendant infringes upon his or her freedom of speech protected by the First Amendment, the defendant's conviction must be reversed without any showing that such infringement was "substantial." *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). We therefore overrule *Hammersley* to the extent that it holds that a statute is not unconstitutionally overbroad as applied to a particular defendant's speech unless it precludes a significant amount of the constitutionally protected speech.

■ Poe now raises on appeal the issue of whether Idaho Code § 18–6409 is unconstitutionally overbroad on its face in violation of the First and Fourteenth Amendments to the Constitution of the United States. Under the decisions of the United States Supreme Court, Poe is entitled to raise this issue even if his own conduct could be punished criminally by a statute drawn with the requisite narrow specificity. As explained by the Supreme Court:

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. As a corollary, the Court has altered its traditional rules of standing to permit—in the First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830, 839–40 (1973). It is therefore unnecessary to examine the scurrilous words spoken by Poe in this case in order to determine whether the statute is overly broad. Rather, we must simply examine the statute on its face.

■ The First Amendment to the Constitution of the United States protects both actual speech and symbolic or expressive conduct. *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). A statute that punishes only spoken words is facially overbroad if it is susceptible of application to speech that is protected by the First Amendment. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). The overbreadth doctrine has less application, however, to conduct. *Virginia v. Hicks,* 539 U.S. 113, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). In the latter circumstance, the statute will not be held overly broad unless its application to protected speech is substantial, not only in an absolute sense but also relative to the scope of the law's plainly legitimate applications. *Id.* Nonverbal expressive activity can be banned

894

because of the action it entails as long as such ban is unrelated to the ideas it expresses. *R.A.V. v. St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Likewise, reasonable time, place, or manner restrictions on speech may be upheld if they are justified without reference to the content of the speech, and speech may be proscribed based upon a non-content element, such as noise. *Id.* The Supreme Court has permitted restrictions upon the content of speech in a few limited areas, such as obscenity, defamation, fighting words, true threats, and intimidation. As it stated in *R.A.V. v. St. Paul*, 505 U.S. 377, 382–83, 112 S.Ct. 2538, 2542–43, 120 L.Ed.2d 305, 317 (1992):

> From 1791 to the present, however, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." [citation omitted] We have recognized that "the freedom of speech" referred to by the First Amendment does not include a freedom to disregard these traditional limitations. *See, e.g., Roth v. United States*, 354 U.S. 476, [77 S.Ct. 1304, 1 L.Ed.2d 1498] (1957) (obscenity); *Beauharnais v. Illinois*, 343 U.S. 250, [72 S.Ct. 725, 96 L.Ed. 919] (1952) (defamation); *Chaplinsky v. New Hampshire*, [315 U.S. 568, [62 S.Ct. 766, 86 L.Ed. 1031] (1942)] (" 'fighting' words"); see generally Simon & Schuster, supra, at 124 (KENNEDY, J., concurring in judgment). Our decisions since the 1960's have narrowed the scope of the traditional categorical exceptions for defamation, see *New York Times Co. v. Sullivan*, 376 U.S. 254, [84 S.Ct. 710, 11 L.Ed.2d 686] (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, [94 S.Ct. 2997, 41 L.Ed.2d 789] (1974); see generally *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13–17, [110 S.Ct. 2695, 2702–05, 111 L.Ed.2d 1, 14–17] (1990), and for obscenity, see *Miller v. California*, 413 U.S. 15, [93 S.Ct. 2607, 37 L.Ed.2d 419] (1973), but a limited categorical approach has remained an important part of our First Amendment jurisprudence.

In *Virginia v. Black*, 538 U.S. 343, ——, 123 S.Ct. 1536, 1548, 155 L.Ed.2d 535, 552 (2003) (citations omitted), the United States Supreme Court held that true threats are not protected by the First Amendment, nor is intimidation when it is a type of true threat.

"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need actually intend to carry out the threat. Rather, a prohibition of true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

When determining whether Idaho Code § 18–6409 is overly broad, we must first examine what the statute makes criminal. It contains three main parts, the first of which has three subparts. A violation of the statute can be committed as follows:

> Every person who maliciously and wilfully [1] disturbs the peace or quiet of any neighborhood, family or person, [a] by loud or unusual noise, or [b] by tumultuous or offensive conduct, or [c] by threatening, traducing, quarreling, challenging to fight or fighting, or [2] fires any gun or pistol, or [3] uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

Grammatically, the words "disturbs," "fires," and "uses" are compound verbs that have the same subject, "person." Thus, a person would violate the statute if he or she maliciously and willfully either "disturbs" the peace or quiet in one of the ways specified, or "fires" a gun, or "uses" the proscribed language in the presence or hearing of children in a loud and boisterous manner. The sub-

parts labeled [a], [b], and [c] are adverbial prepositional phrases modifying the verb "disturbs" and explaining how someone can disturb the peace in order to violate the statute. In *State v. Hammersley*, 134 Idaho 816, 10 P.3d 1285 (2000), we held that the adverbs "maliciously" and "willfully" modified the third verb "uses," and they would therefore logically modify the first two verbs also.

The dissent correctly points out that the above construction of § 18–6409 differs from the construction given it in *State v. Suiter*, 138 Idaho 13, 56 P.3d 775 (2002). Likewise, the construction given the statute in *State v. Suiter* differed from the construction given it in *State v. Hammersley*, 134 Idaho 816, 10 P.3d 1285 (2000). The construction we have given is consistent with *Hammersley*. The issue is whether or not the words "disturbs the peace or quiet of any neighborhood, family or person" apply to all portions of the statute. In *Suiter*, they were construed as applying to all parts of the statute. In *Hammersley*, they were not.[2] In neither case was the issue material to the opinion. *Hammersley* simply held that the words spoken, in the context in which Hammersely used them, constituted "fighting words." *Suiter* held that the words spoken by Suiter, in the context in which he used them, did not constitute "fighting words." Thus, the issue is which construction of the statute is correct. The construction given above is based upon the application of recognized rules of grammar. Although the dissent apparently objects to the result, it does not contend that the rules of grammar were incorrectly applied.

The first part of the statute provides, "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, [a] by loud or unusual noise, or [b] by tumultuous or offensive conduct, or [c] by threatening, traducing, quarreling, challenging to fight or fighting . . . is guilty of a misdemeanor." The first two subparts seek to regulate conduct, not pure speech, and are neutral with respect to the content of any expressive element of such conduct that may exist in a particular circumstance. Poe has not shown that the application of these subparts to protected speech is substantial.[3]

The third subpart of the first part of the statute applies both to speech and to conduct. It applies to "threatening, traducing, quarreling, challenging to fight or fighting." Although in some circumstances a threat is constitutionally protected speech, *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), we construe the word "threatening" to encompass statements where the speaker intends to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. As so construed, the state may criminalize such speech. *Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). The word "traducing" means speaking maliciously and falsely of someone. WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1502 (Barnes & Noble Books 1989). In context, "traducing" would be speaking maliciously and falsely to someone face-to-face where the words spoken would constitute "fighting words" those words spoken face-to-face that are "likely to provoke the average person to retaliation, and thereby cause a breach of the peace."[4] *Chaplinsky*

---

2. When addressing what we have labeled above as the third part of the statute, *Hammersley* twice stated that that portion of the statute provided, insofar as is relevant, as follows:

> Disturbing the peace.—Every person who maliciously and willfully . . . uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor. 134 Idaho at 819, 820, 10 P.3d at 1288, 1289. *Hammersley* did not construe the words "disturbs the peace or quiet of any neighborhood, family or person" as applying to that portion of the statute prohibiting the malicious and willful

use of any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner. In fact, *Hammersley* did not even mention those words in its opinion.

3. "Offensive conduct" does not mean speech whose content the hearer finds offensive because such construction would be unconstitutional. *Gooding v. Wilson*, 405 U.S. 518, 526, 92 S.Ct. 1103, 1108, 31 L.Ed.2d 408, 416 (1972).

4. "Fighting words" are those likely to provoke the "average" person to retaliation, and thereby cause a breach of the peace. It is no defense

*v. New Hampshire,* 315 U.S. 568, 574, 62 S.Ct. 766, 770, 86 L.Ed. 1031, 1036 (1942). As such, they are not protected by the First Amendment.

■■■■ The word "quarreling" means engaging in "an angry dispute or altercation." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1175 (Barnes & Noble Books 1989). By prohibiting disturbing the peace by quarreling, the statute is not concerned with the content of what is said. Rather, the statute prohibits engaging in an angry dispute in such a manner that the participants' voices maliciously and willfully disturb the peace or quiet of any neighborhood, family or person. This is not a content restriction, but is based upon the non-content element of the speech. As such, it does not substantially infringe upon any First Amendment rights.

■■■■ The final portion of the third subpart is "challenging to fight or fighting." The phrase "challenging to fight" is usually construed to mean inviting someone face-to-face to engage immediately in physical combat. Challenging to fight is not limited to expressly inviting the addressee to fight, however, but also includes attempting to incite the addressee to fight by the use of "fighting words." Finally, fighting—engaging in physical combat—is conduct, not speech, and criminalizing it would not substantially infringe upon any First Amendment rights.

■■■ The second part of the statute provides, "Every person who maliciously and willfully ... fires any gun or pistol ... is guilty of a misdemeanor." This part of the statute applies only to conduct, and criminalizing it would not substantially infringe upon any First Amendment rights.

■■■■ The third part of the statute provides, "Every person who maliciously and willfully ... uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor." This part of the statute applies solely to pure speech, and it criminalizes speech solely because of its content. The speech must be vulgar, profane, or indecent. It is clear that this part of the statute is not intended to apply to "fighting words" because there need not be any addressee in order to violate the statute. The words must be uttered "within the presence or hearing of children," but they need not be addressed to children or to anyone else.[5] It is likewise clear that this part of the statute is not intended to apply to words that would constitute obscenity that is not protected by the Constitution. If it were, it would not require that the words be spoken in a "loud and boisterous manner." If the intent were simply to protect children from erotic speech, then there would be no requirement that such speech be spoken in a loud and boisterous manner. The terms "vulgar," "profane," and "indecent" have similar meanings. Both "indecent" and "profane" can mean "vulgar." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 722, 1148 (Barnes & Noble Books 1989). This part of the statute is intended to prohibit the use of vulgar language or profanity within the presence or hearing of children, if spoken in a loud or boisterous manner.

When analyzing the facial constitutionality of this provision, we must first address whether, as construed by the United States Supreme Court, the Constitution protects vulgar language and profanity. The United States Supreme Court has held that it does.

that the addressee in a particular case did not so retaliate, or would have been unlikely to retaliate out of fear of being physically beaten by the speaker. Conversely, a person is not rendered guilty because the addressee reacted with violence to a statement that an average person would have simply ignored.

5. Vulgar, profane, or indecent language directed to another while in the presence or hearing of children can constitute fighting words. *State v. Hammersley,* 134 Idaho 816, 10 P.3d 1285

(2000). It is not the presence of children that makes them fighting words, however, nor is it the fact that the words themselves are vulgar, profane, or indecent. Rather, vulgar, profane, or indecent language can be fighting words if it constitutes "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291 (1971).

In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), the Supreme Court reversed the conviction of a man convicted of disturbing the peace for wearing a jacket bearing the words "F— the Draft" into a California courtroom. The Supreme Court held that the constitutional right of free expression does not permit States to determine that some words can be banned from public discourse because they are offensive.

> How is one to distinguish this from any other offensive word? Surely the State has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us. Yet no readily ascertainable general principle exists for stopping short of that result were we to affirm the judgment below. For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual.

403 U.S. at 25, 91 S.Ct. at 1788, 29 L.Ed.2d at 294, . The Court also held that profanity adds an emotive force to speech and is therefore protected by the Constitution.

> Additionally, we cannot overlook the fact, because it is well illustrated by the episode involved here, that much linguistic expression serves a dual communicative function: it conveys not only ideas capable of relatively precise, detached explication, but otherwise inexpressible emotions as well. In fact, words are often chosen as much for their emotive as their cognitive force. We cannot sanction the view that the Constitution, while solicitous of the cognitive content of individual speech, has little or no regard for that emotive function which, practically speaking, may often be the more important element of the overall message sought to be communicated. Indeed, as Mr. Justice Frankfurter has said, "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures-and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation."

403 U.S. at 25–26, 91 S.Ct. at 1788, 29 L.Ed.2d at 294 (citation omitted). Finally, the Supreme Court held that permitting the States to ban particular words ran the risk that the States could ban words in order to suppress ideas.

> Finally, and in the same vein, we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views. We have been able, as noted above, to discern little social benefit that might result from running the risk of opening the door to such grave results.

403 U.S. at 26, 91 S.Ct. at 1788–89, 29 L.Ed.2d at 294.

Likewise, in *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), the Supreme Court overturned a woman's conviction under a statute that made it unlawful "to curse or revile or to use obscene or opprobrious language toward or with reference to" a police officer while in performance of his duties. She had screamed a string of expletives at an officer who had stopped the vehicle in which she was riding. The Supreme Court held the statute could be upheld only if "it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments." 415 U.S. at 134, 94 S.Ct. at 973, 39 L.Ed.2d at 219. It then held the statute unconstitutional on its face because it was not limited to "fighting words." Finally, when recently listing the categories of unprotected speech, the Supreme Court did not list either vulgar speech or profanity. *R.A.V. v. St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Therefore, under the opinions of the United States Supreme Court, speech that is vulgar, profane, or indecent is protected by the Constitution.

■ Even though using vulgar, profane, or indecent language is constitutionally protected, can its use be criminalized if it is used maliciously? The specific-intent requirement that the words must be spoken "maliciously" does not limit the statute to unprotected speech. Although the specific intent requirement narrows the scope of the statute, simply requiring that the words be spoken with a specific intent is not sufficient to remove them from the protection of the Constitution. For example, the government could not prohibit speech in circumstances where the speaker had the specific intent to criticize the government. The issue is whether words spoken with the specific intent at issue are unprotected by the Constitution.

■ In this case, the specific intent requires that the words be spoken "maliciously," which means with the intent to "vex, annoy, or injure another person." *State v. Hammersley*, 134 Idaho 816, 10 P.3d 1285 (2000). In this context, "injure" cannot mean to injure the person physically because mere words cannot do that. Rather, it means to hurt the person's feelings.[6] Thus, the issue is whether the government can prohibit speech that is intended to vex, annoy, or hurt the feelings of the hearer.

The Supreme Court has never held that pure speech is unprotected by the Constitution when the speaker intends to vex, annoy, or hurt the feelings of another. It has held the opposite. In overturning a disturbing the peace conviction for speech that vigorously, if not viciously, criticized various groups, the Supreme Court in *Terminiello v. City of Chicago*, 337 U.S. 1, 4–5, 69 S.Ct. 894, 896, 93 L.Ed. 1131, 1134–35 (1949) (citations omitted), stated:

Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.

The ordinance as construed by the trial court seriously invaded this province. It permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand.

Likewise, in *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), the Supreme Court held unconstitutional on its face a state statute that criminalized words "conveying or intended to convey disgrace" or constituting "harsh insulting language" because such categories of speech were not limited to "fighting words."

■ The dissent contends that we are "ignoring the limiting construction this Court has previously given the statute [in *Hammersley* ]." In actuality, we discussed that construction above. The portion of the *Hammersley* opinion that the dissent contends constituted the Court giving a limiting construction to the statute is as follows:

By its very terms, I.C. § 18–6409 is self-limiting in its application and does not infringe upon a significant amount of Hammersley's speech. The first sentence of I.C. § 18–6409 requires the specific intent that the conduct regulated be willful and malicious. As defined by section 18–101 of the Idaho Code, "willfully" means a purpose or willingness to commit the act or make the omission referred to. *See* I.C. § 18–101(1). "Maliciously" imports a wish to vex, annoy, or injure another person, or an intent to do a wrongful act. *See* I.C. § 18–101(4). Through its specific intent re-

---

**6.** One definition of "injure" is "to do wrong or injustice to: *to injure a friend's feelings.*" WEB-STER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 732 (Barnes & Noble Books 1989).

quirement that the regulated speech be malicious, I.C. § 18–6409 limits its application to those circumstances where the speech is intended to "vex, annoy, or injure another person." Such communications, as previously discussed, do not come within the realm of protections afforded by either the U.S. or Idaho Constitutions. We conclude that Hammersley's conduct falls squarely within the specific intent requirement of I.C. § 18–6409 and therefore her [sic] conduct is not constitutionally protected. Accordingly, we hold that as applied to Hammersley, I.C. § 18–6409 is not overbroad.

134 Idaho at 821, 10 P.3d at 1290. The above-quoted portion of the *Hammersley* opinion simply applied the statutory definitions of "wilfully" and "maliciously" to those same words in § 18–6409. As discussed above, the issue is not simply whether such statutory definitions limit the application of the statute. Rather, the issue is whether the requirement that the words be spoken with the intent to "vex, annoy, or injure another person" narrows the scope of the statute on its face to "fighting words" as defined by the United States Supreme Court. As discussed above, it clearly does not. If a statute proscribing words "conveying or intended to convey disgrace" is not limited to "fighting words," *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); a statute providing "No person shall abuse another by using menacing, insulting, slanderous, or profane language" is not limited to "fighting words," *Plummer v. City of Columbus*, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); a statute proscribing "harsh insulting language" is not limited to "fighting words," *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); and a statute proscribing speech that "stirred people to anger, invited public dispute, or brought about a condition of unrest" is not limited to "fighting words," *Terminiello v. City of Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), then limiting Idaho Code § 18–6409 to words spoken with the intent to "vex, annoy, or injure another person['s feelings]" is not limited to "fighting words." *Hammersley*, and the dissent, state that words intended to vex, annoy, or injure another's feelings "do not come within the realm of protections afforded by either the U.S. or Idaho Constitutions," but they do not support that conclusion with either analysis or authority. Although *Hammersley* did discuss "fighting words," which it correctly defined as "those personally abusive epithets which, when addressed to an ordinary citizen, are inherently likely to provoke violent reaction," 134 Idaho at 819, 10 P.3d at 1288 (quoting from *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971),) words that may annoy someone clearly do not rise to the level of fighting words.

Finally, we must address whether vulgar speech or profanity can be criminalized because it is used within the presence or hearing of persons under eighteen years of age. The United States Supreme Court has never so held, and its decisions indicate that it cannot. In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), the Court addressed the issue of whether States could ban speech in order to protect the sensibilities of the hearers. In holding that it could not, the Court stated as follows:

Finally, in arguments before this Court much has been made of the claim that Cohen's distasteful mode of expression was thrust upon unwilling or unsuspecting viewers, and that the State might therefore legitimately act as it did in order to protect the sensitive from otherwise unavoidable exposure to appellant's crude form of protest. Of course, the mere presumed presence of unwitting listeners or viewers does not serve automatically to justify curtailing all speech capable of giving offense. While this Court has recognized that government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue, we have at the same time consistently stressed that "we are often 'captives' outside the sanctuary of the home and subject to objectionable speech." The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy

interests are being invaded in an essentially intolerable manner. Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections.

403 U.S. at 21, 91 S.Ct. at 1786, 29 L.Ed.2d at 291–92. Likewise, in *Gooding v. Wilson*, 405 U.S. 518, 527, 92 S.Ct. 1103, 1108, 31 L.Ed.2d 408, 417, the Supreme Court stated that speech could not be made criminal merely because the words used are offensive to some who hear them. "This definition makes it a 'breach of peace' merely to speak words offensive to some who hear them, and so sweeps too broadly." In *Gooding v. Wilson*, the appellant was convicted under a statute that made it illegal, without provocation, to "use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace." 405 U.S. at 518, 92 S.Ct. at 1104, 31 L.Ed.2d at 411. As an example of the Georgia appellate courts' failure to narrow the statute so that it does not prohibit speech protected by the Constitution, the Supreme Court stated, "[A] conviction under the statute was sustained for awakening 10 women scout leaders on a camp-out by shouting, 'Boys, this is where we are going to spend the night.' 'Get the G—— d—— bed rolls out ... let's see how close we can come to the G—— d—— tents.'" 405 U.S. at 525, 92 S.Ct.at 1107, 31 L.Ed.2d at 416.

In *Rosenfeld v. New Jersey*, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972), the appellant had been convicted for using profane language at a public meeting, attended by women and children, under a statute which the Supreme Court of New Jersey had construed to apply only to indecent words spoken loudly in a public place where the words were "likely, in the light of the gender and age of the listener and the setting of the utterance, to affect the sensibilities of a hearer." *State v. Rosenfeld*, 62 N.J. 594, 303 A.2d 889, 892 (1973). In addition, the words had to be spoken with the intent to affect the sensibilities of the hearer or with reckless disregard of the probability of such consequences. The conviction had been affirmed

on appeal, and then appealed to the United States Supreme Court. A majority of the Supreme Court ordered the judgment vacated and the case remanded to the New Jersey appellate court for reconsideration in light of *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), and *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). *Rosenfeld v. New Jersey*, 408 U.S. 901 (1972).[7] The minority dissented on the ground that the Constitution permitted States to criminalize uttering profane language that is calculated to offend the sensibilities of an unwilling audience. "It [the exception to First Amendment protection] also extends to the willful use of scurrilous language calculated to offend the sensibilities of an unwilling audience." *Id.* at 905, 92 S.Ct. at 2481, 33 L.Ed.2d at 322–23 (Powell, J., dissenting). The majority of the Supreme Court, however, was obviously unwilling to create that exception to the First Amendment.

▮ In summary, the United States Supreme Court has repeatedly held that pure speech is protected by the First Amendment except for certain well-defined and narrowly limited classes of speech. "From 1791 to the present, however, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V. v. St. Paul*, 505 U.S. 377, 382–83, 112 S.Ct. 2538, 2542–43 120 L.Ed.2d 305, 317 (1992) (quoting from *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942)). The Supreme Court has stressed, however, that "a limited categorical approach has remained an important part of our First Amendment jurisprudence." 505 U.S. at 383, 112 S.Ct. at 2543, 120 L.Ed.2d at 317. In *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31

---

7. The conviction was reversed on remand. *State v. Rosenfeld*, 62 N.J. 594, 303 A.2d 889, 892 (1973).

L.Ed.2d 408 (1972); *Rosenfeld v. New Jersey,* 408 U.S. 901, 92 S.Ct. 2479 (1972); *Plummer v. City of Columbus,* 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); and *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), the Supreme Court had opportunities to expand those categories to include vulgar or profane speech, and it declined to do so. In the *Rosenfeld* case, the Supreme Court had an opportunity to expand those categories to include protection for the sensibilities of unwilling listeners, including children, and it declined to do so. The Supreme Court could have chosen to treat vulgar and profane speech in a manner similar to obscenity and held that it is not protected by the First Amendment when the average person, applying contemporary community standards, would find it patently offensive and devoid of any serious communicative value. The Supreme Court has not chosen to do so, however. Considering these decisions of the United States Supreme Court, we are constrained to hold that the third part of Idaho Code § 18–6409 is unconstitutional because as written it criminalizes speech that is protected by the First Amendment, and we therefore strike that part of the statute.

The dissent argues, "The state has a legitimate interest in 'protecting minors from exposure to vulgar and offensive spoken language.' *See Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 676, 106 S.Ct. 3159, 3161, 92 L.Ed.2d 549, 554 (1986) (citing *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978)). To the extent I.C. § 18–6409 criminalizes speech, it does so pursuant to this interest." The problem with the dissent's argument is that those Supreme Court opinions have absolutely no application in this case.

The *Pacifica Foundation* case dealt with the issue of "whether the Federal Communication Commission (FCC) has any power to regulate a radio broadcast that is indecent but not obscene." 438 U.S. at 729, 98 S.Ct. at 3030, 57 L.Ed.2d at 1081. In holding that the FCC has such power, the Supreme Court noted that "it is broadcasting that has received the most limited First Amendment protection." *Id.* at 748, 98 S.Ct. at 3040, 57

L.Ed.2d at 1092. The Court gave two examples illustrating the limited First Amendment protection of the broadcast media.

Thus, although other speakers cannot be licensed except under laws that carefully define and narrow official discretion, a broadcaster may be deprived of his license and his forum if the Commission decides that such an action would serve "the public interest, convenience, and necessity." Similarly, although the First Amendment protects newspaper publishers from being required to print the replies of those whom they criticize, it affords no such protection to broadcasters; on the contrary, they must give free time to the victims of their criticism.

*Id.* (citations and footnote omitted). The Court also emphasized that its holding was narrow and should not be read as applying to speech in general or as authorizing criminal prosecution for the indecent speech involved that may have been heard by children.

It is appropriate, in conclusion, to emphasize the narrowness of our holding. This case does not involve a two-way radio conversation between a cab driver and a dispatcher, or a telecast of an Elizabethan comedy. We have not decided that an occasional expletive in either setting would justify any sanction or, indeed, that this broadcast would justify a criminal prosecution. *Id.* at 750, 98 S.Ct. at 3041, 57 L.Ed.2d at 1094.

The *Bethel School District* case dealt with the issue of whether a student could be disciplined for using "an elaborate, graphic, and explicit sexual metaphor" during a speech delivered at a high school assembly. Again, the Supreme Court noted the limited First Amendment protection that was present in a school setting. "In *New Jersey v. T.L.O.,* [469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)], we reaffirmed that the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." 478 U.S. at 682, 106 S.Ct. at 3164, 92 L.Ed.2d at 558. (citation omitted).

These two cases would apply to the instant case only if we were to hold that the limited First Amendment protection afforded to

broadcasting and to speech in high school classrooms or assemblies also applies to the population at large. The United States Supreme Court has never so held. Indeed, if First Amendment protection enjoyed by the population at large is the same as that applicable to broadcasting and in high schools, there would have been no need for the United States Supreme Court to stress in both the *Pacifica Foundation* case and the *Bethel School District* case that the First Amendment protection applicable in those cases was limited. We cannot simply take phrases out of context from opinions of the Supreme Court and elevate them into the holding of the Court.

The dissent asserts, "The Court's opinion in this case reinterprets I.C. § 18–6409 to create overbreadth." This assertion is apparently based upon our construction of the statute, according to the rules of grammar, which results in the words "disturbs the peace or quiet of any neighborhood, family or person" not applying to the last part of the statute. The dissent does not provide any analysis supporting this assertion, however. For it to be valid, what is otherwise protected speech under the First Amendment would have to become unprotected speech if it "disturbs the peace or quiet of any neighborhood, family or person." As shown above, that assertion is clearly not supported by the decisions of the United States Supreme Court. Although the government can, by a narrowly drawn statute, constitutionally prohibit the intrusion of unwelcome speech into individuals' homes, *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), § 18–6409 is not narrowly tailored to protect that interest.

Even though the statute was overbroad on its face, the next issue is the appropriate remedy. When the state appellate court has affirmed a defendant's conviction under an overly broad statute, the United States Supreme Court on appeal can only set aside the conviction. The Supreme Court cannot provide a narrowing construction of the statute because it lacks the jurisdiction authoritatively to construe state legislation. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). The Supreme Court

also prevents enforcement of the overly broad state statute against others so that their freedom of speech will not be chilled. When the state appellate court has construed the statute to eliminate overbreadth, however, those considerations no longer apply. If the state appellate court has narrowed the statute appropriately, there is no need to prevent continued enforcement of the statute for fear of chilling the First Amendment rights of others. Likewise, "[c]ourts routinely construe statutes so as to avoid the statutes' potentially overbroad reach, apply the statute in that case, and leave the statute in place." *Osborne v. Ohio,* 495 U.S. 103, 119, 110 S.Ct. 1691, 1701, 109 L.Ed.2d 98, 115 (1990). A statute as construed may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendant. *Id.* at 113, 110 S.Ct. at 1698, 109 L.Ed.2d at 111–12.

■ Poe does not contend that Idaho Code § 18–6409 was unconstitutional as applied to his conduct. He does not contend that his conduct did not constitute traducing or challenging to fight, or that his words were not "fighting words" as herein defined. He likewise does not contend that he did not have fair notice that his conduct was proscribed by the statute. He challenged his conviction under the statute solely upon the ground that it was overbroad on its face and not on the ground that his conviction under the statute violated his right of free speech. Therefore, because we have construed the statute to eliminate its overbreadth, we will not reverse Poe's conviction based solely upon his challenge that the statute is facially overbroad.

The dissent argues that because we affirm Poe's conviction on an alternate ground, we did not need to address the overbreadth issue. That argument misapprehends the decisions of the United States Supreme Court. The "alternate ground" to which the dissent refers is not that at all. Rather, it is merely the second part of the analysis required by Poe's challenge.

Poe challenged Idaho Code § 18–6409 as being overly broad on its face. Under the decisions of the United States Supreme Court, he is entitled to do so even if the

words he spoke could be constitutionally prohibited under a narrowly and precisely drawn statute. As the Supreme Court stated in *Gooding v. Wilson,* 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413 (1972) (citations omitted):

> It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech and when "no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution," the transcendent value to all society of constitutionally protected expression is deemed to justify allowing "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct would not be regulated by a statute drawn with the requisite narrow specificity." This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

Poe is entitled to assert the overbreadth defense until § 18–6409 is narrowed so that it is not susceptible of application to speech that the United States Supreme Court has held protected by the First Amendment. Under the decisions of the United States Supreme Court, the statute could not be applied to Poe until and unless a satisfactory limiting construction is placed upon it.

> "Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute."

*Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413 (1972) (quoting from *Coates v. City of Cincinnati,* 402 U.S. 611, 619–20, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214, 220–21 (1971) (White, J., dissenting)) Once the statute is so narrowed,

then the issue is whether Poe's conviction can be upheld under the narrowed statute. *Osborne v. Ohio,* 495 U.S. 103, 119, 110 S.Ct. 1691, 1701, 109 L.Ed.2d 98, 115–16 (1990). That issue cannot be reached, however, until the statute is first narrowed so that it is not susceptible of application to constitutionally protected speech.

**B. Is Idaho Code § 18–6409 Unconstitutionally Vague?**

Generally, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Poe argues that Idaho Code § 18–6409 is unconstitutionally vague because it encourages arbitrary and discriminatory enforcement due to its lack of standards defining when someone's peace is disturbed or what words are "vulgar," "profane," or "indecent."

With respect to Poe's first argument, the statute provides: "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting ... is guilty of a misdemeanor." The statute gives sufficient guidelines regarding the type of conduct that is involved. It is directed towards "loud or unusual noise," "tumultuous or offensive conduct," or "threatening, traducing, quarreling, challenging to fight or fighting." The statute is not rendered vague because it fails to precisely quantify the level of such conduct necessary to disturb someone else's peace. That will depend upon the circumstances. The requirement that the defendant must maliciously and willfully disturb the peace in one of the ways specified provides adequate standards to protect against arbitrary and discriminatory enforcement. With our decision regarding facial challenge to the statute, Poe's argument regarding the vagueness of the words "vulgar," "profane," or "indecent" is moot.

## C. Did the Prosecution in this Case Violate Poe's Right to Privacy?

 Relying upon *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), Poe argues ·that his conduct in this case was protected by his right to privacy because he made the statements ·while he was either in his home or on his front porch. In *Stanley v. Georgia,* the United States Supreme Court created a right of privacy to legalize the possession of pornographic materials in one's own home. As the Supreme Court stated in *Osborne v. Ohio,* 495 U.S. 103, 108, 110 S.Ct. 1691, 1695–96, 109 L.Ed.2d 98, 108 (1990), however, the *Stanley* case "was a narrow holding," and it "should not be read too broadly." In *Osborne,* the Supreme Court held that such right of privacy did not extend to the possession of child pornography, and in *United States v. 12 200– ft. Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Court held that such right of privacy did not include the right to import pornography into this country even if it was intended to be for private use in one's own home.

Poe argues that a constitutional right of privacy should protect the use of vulgar, profane, or indecent language in one's own home. That is not the issue in this case, however. The issue is whether a right of privacy should be created to shield the use of "fighting words" in or around one's own home. Although the United States Supreme Court has found rights of privacy to legalize several categories of conduct, there is nothing in either *Stanley v. Georgia* or in any of its other opinions that would indicate the Court believes that the use of "fighting words" in or around one's own home should be constitutionally protected. With the legitimate concern for the levels of domestic violence that exist in society, we are not persuaded that the Supreme Court would hold that "fighting words" directed at another who · is in or around the speaker's home should be protected by a right of privacy.

## D. Did the Trial Court Err by Admitting Hearsay Statements · into Evidence Under the Excited Utterance Exception to the Hearsay Rule?

 After leaving Poe's house, the thirteen-year-old boy ran to his mother's car, got in and locked the doors, and waited for his mother to come out with the three-year-old. Once she got to the car, the boy telephoned his aunt and told her what had happened. The aunt was permitted to testify, over objection, about what the thirteen-year-old had told her. The trial court admitted the aunt's testimony under the excited utterance exception to the hearsay rule.

 The hearsay rule does not exclude from evidence a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. *State v. Zimmerman,* 121 Idaho 971, 829 P.2d 861 (1992); IDAHO R. EVID. 803(2). This exception to the hearsay rule has two requirements: (a) There must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer; and (b) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. Factors that the trial court can consider include the time lapse between the startling event and the statement, the nature of the condition or event, the age and condition of the declarant, the presence or absence of self interest, and whether the statement was volunteered or made in response to a question. Whether a statement falls within the excited utterance exception to· the hearsay rule is a discretionary determination to be made by the trial court. *State v. Bingham,* 116 Idaho 415, 776 P.2d 424 (1989).

The thirteen-year-old boy testified that as he was walking away from Poe's house, Poe opened the door, yelled a profane name at him from the porch, and then started walking off the porch. · He then testified that he was scared because he thought Poe was coming after him, and he ran to his mother's car. When she arrived ·at the car, he then telephoned his aunt. He testified that at that time, he was "really shaky" and "in tears." His aunt testified that when the boy called her, he was extremely hysterical, crying, and "was so besides [sic] himself at what had happened." The trial court did not abuse its

discretion in holding that the boy's statement to his aunt was an excited utterance and therefore admissible as an exception to the hearsay rule.

### E. Did the Trial Court Err in Instructing the Jury?

 Poe argues that the trial court erred in failing to give two of his proposed jury instructions. Whether the trial court properly instructed the jury presents a question of law over which this Court exercises free review. *State v. Keaveny,* 136 Idaho 31, 28 P.3d 372 (2001). On appeal, when a party challenges a decision of the trial court denying a proposed jury instruction, we review the jury instructions to determine whether the instructions, taken as a whole, fairly and accurately reflect the issues and the applicable law. *Lankford v. Nicholson Mfg. Co.,* 126 Idaho 187, 879 P.2d 1120 (1994). A defendant's requested instruction is not required when it is a misstatement of the law, adequately covered by other jury instructions, or is not supported by the facts. *State v. Humpherys,* 134 Idaho 657, 8 P.3d 652 (2000).

 In this case, the record on appeal does not include Poe's proposed jury instructions. We are bound by the record and cannot consider matters or materials not part of or contained therein. *State ex rel. Ohman v. Ivan H. Talbot Family Trust,* 120 Idaho 825, 820 P.2d 695 (1991). Therefore, we will not consider the issue of whether the trial court erred by failing to give Poe's proposed jury instructions.

Poe also argues that the trial court erred by instructing the jury regarding the statutory definition of "wilfully" in Idaho Code § 18-101(1), which provides:

The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

1. The word "wilfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require

any intent to violate law, or to injure another, or to acquire any advantage.

 He argues that this definition of "wilfully" is not consistent with the definition of "maliciously," which means with the intent to "vex, annoy, or injure another person," *State v. Hammersley,* 134 Idaho 816, 10 P.3d 1285 (2000). According to Poe, the word "wilfully" must therefore be interpreted as requiring an intent to disturb the peace of another person. Poe, in essence, argues that "wilfully" must be defined so that it is basically synonymous with "maliciously." He offers no reason why, other than to argue that the two words should be construed to have similar meanings. There is nothing in the context of Idaho Code § 18-6409 that indicates a legislative intent for the word "wilfully" in that statute to have a meaning different from that provided by Idaho Code § 18-101(1). *Hammersley* stated that the statutory definition of "wilfully" provided by § 18-101 applied to the word "wilfully" in § 18-6409, and Poe has not shown any reason to hold to the contrary. Therefore, the trial court did not err in giving the statutory definition of that term.

### F. Did the State Fail to Allege an Essential Element of the Offense in the Complaint?

 Poe alleges that the complaint in this case was defective because it failed to allege that his conduct was committed "in a loud and boisterous manner." This prepositional phrase only modifies the verb "uses" in the third part of the statute. It does not modify the other two verbs. For example, it is not necessary that a person fire a gun or pistol in a loud and boisterous manner. As written, the statute does not require that the "threatening, traducing, quarreling, challenging to fight or fighting" be done in a loud and boisterous manner. Therefore, the complaint was not required to allege that particular element with respect to those allegations.

### G. Was There a Conflict in the Jury Instructions that Entitles Poe to a New Trial?

 The complaint initially filed in this case alleged that Poe disturbed the peace of

the thirteen-year-old boy. On the day of trial, the State filed an amended complaint in which it alleged that Poe had disturbed the peace of both the thirteen-year-old boy and Poe's three-year-old son. At the beginning of the trial, the trial court instructed the jury regarding the allegations in the amended complaint. When discussing the proposed jury instructions after the evidence had been presented, Poe objected to including the three-year-old in the elements instruction given to the jury because there was no proof that his peace had been disturbed. The trial court agreed and instructed the jury that in order for Poe to be guilty, they must find that he disturbed the peace of the thirteen-year-old. Poe argues, however, that the introductory instructions conflicted with the elements instruction, and that the jury may have found him guilty of disturbing the peace of his three-year-old son rather than the thirteen-year-old.

Poe contends that the conflicting instructions were as follows. The final sentence of Instruction Number Two stated as follows: "Unless the State proves beyond a reasonable doubt that the defendant has committed every element of the offense for which he is charged, you must find him not guilty." Instruction Number Five informed the jury that Poe was charged with disturbing the peace of the thirteen-year-old "and/or" the three-year-old. Instruction Number Six, the elements instruction, informed the jury that "[i]n order for the defendant to be guilty of Disturbing the Peace, the State must prove each of the following," including that Poe "disturbed the peace of [the thirteen-year-old]." It concluded with the statement, "If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty. If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty." We are not persuaded that, considering the instructions as a whole, the jury would believe that it could find Poe guilty of disturbing the peace of only the three-year-old.

## IV. CONCLUSION

We have construed Idaho Code § 18–6409 and invalidated one part of it to eliminate overbreadth so that it conforms to the opinions of the United States Supreme Court interpreting the First Amendment. Because Poe has not alleged that the statute was unconstitutionally applied to his conduct or that he did not have fair notice that his conduct was proscribed, and because he has not shown any error by the trial court, we affirm the judgment of conviction.

Justices KIDWELL and BURDICK concur.

Justice SCHROEDER, Dissenting.

I respectfully dissent from that portion of the opinion that holds that the third part of Idaho Code § 18–6409 is unconstitutional because as written it criminalizes speech that is protected by the First Amendment. There are several problems with the Court's opinion in this regard. Since the Court affirms the conviction on an alternate ground, there is no reason to reach the extended overbreadth analysis encompassed within the opinion. The analysis confuses the constitutional interpretation previously given the statute by this Court by failing to overrule *Hammersley* or reconcile the earlier analysis in *Suiter.* The determination of overbreadth runs contrary to the construction previously given the statute by this Court. I.C. § 18–6409 could be read to be overbroad were it viewed in a vacuum, but this Court should follow its decision in *Hammersley,* which construed the statute to apply only to unprotected conduct. The analysis should also be consistent with *Suiter,* which it is not. Finally, the Court's conclusion that Mr. Poe conceded his guilt under the traducing portion of the statute is not supported by the record. He pled not guilty and went to trial, conceding nothing.

The Court's abstract analysis of the case fails to adequately address the events that occurred in this case. Those events are not pleasant, but they are necessary to understand why Mr. Poe could properly be found guilty under this Court's prior limiting construction of the statute.

The victim in this case was a thirteen-year-old boy, unrelated to Mr. Poe. He came to Mr. Poe's home with his mother to pick up his three-year-old half brother. Though the

facts are in dispute, there is evidence that Mr. Poe had had a prior unpleasant contact with the child's father and was in an emotional snit. Within the hearing of the child Mr. Poe made a comment to the effect that the child's father "needed to add a couple of inches to the penis." The child was angry and left the house, most likely slamming the door. Mr. Poe then opened the front door while the child was in the front yard and began yelling at him that he was going to come after him and his father, words to the effect that he was going to "kick his ass and kick his father's ass." He referred to the child as a "Jew bastard." The child ran to the car, locked the doors and began shaking and crying—little doubt that his peace was disturbed. This is the predicate to the legal analysis in this case.

Contrary to the Court's position, *Hammersley* did address the issue of whether I.C. § 18–6409 was unconstitutionally overbroad on its face. While the precise issue before the Court was whether I.C. § 18–6409 was overbroad as applied to Hammersley, the Court also conducted the following analysis on the face of the statute:

> By its very terms, I.C. § 18–6409 is self-limiting in its application and does not infringe upon a significant amount of Hammersley's speech. The first sentence of I.C. § 18–6409 requires the specific intent that the conduct regulated be willful and malicious. As defined by section 18–101 of the Idaho Code, "willfully" means a purpose or willingness to commit the act or make the omission referred. *See* I.C. § 18–101(1). "Maliciously" imports a wish to vex, annoy, or injure another person, or an intent to do a wrongful act. *See* I.C. § 18–101(4). Through its specific intent requirement that the regulated speech be malicious, I.C. § 18–6409 limits its application to those circumstances where the speech is intended to "vex, annoy, or injure another person." Such communications, as previously discussed, do not come within the realm of protections afforded by either the U.S. or Idaho Constitutions.

*State v. Hammersley*, 134 Idaho 816, 821, 10 P.3d 1285, 1290 (2000). The Court's opinion in this case that "as written [I.C. § 18–6409]

criminalizes speech that is protected by the First Amendment" effectively overrules *Hammersley*, ignoring the limiting construction this Court has previously given the statute. To say that *Hammersley* was simply an as-applied challenge ignores the essential element of the case—that is the construction the Court gave I.C. 18–6409. That construction remains regardless of other language in the opinion concerning the nature of the challenge. The Court now says that the statute says something different than it said in *Hammersley*. This case overrules *Hammersley* without saying so. By doing so the Court avoids the task of analyzing why prior authority should be abandoned. Stare decisis is not an absolute principle, but typically when prior authority is overruled the reasons for that are articulated, such as the rule is unworkable, or leads to unjust results. As the record now stands *Hammersley* is good law, because the Court did not overrule it, but of course it is not good law because the reading of § 18–6409 the Court gave in *Hammersley* is ignored, and that reading is different from the one now given.

The Court's opinion also deviates from the construction given to I.C. § 18–6409 in *State v. Suiter*, 138 Idaho 13, 56 P.3d 775 (2002). In *Suiter*, the Court parsed I.C. § 18–6409 into the following five, rather than three, subparts:

> To convict one for disturbing the peace pursuant to I.C. § 18–6409, the state must prove beyond a reasonable doubt that one "maliciously and wilfully [sic] disturb[ed] the peace or quiet of any neighborhood, family or person" in one of five manners:
>> by [1] loud or unusual noise, or by [2] tumultuous or offensive conduct, or by [3] threatening, traducing, quarreling, challenging to fight or fighting, or [4] fir[ing] any gun or pistol, or [5] use[ing] any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner
>> . . .

*Id.* at 16, 56 P.3d at 778 (citing I.C. § 18–6409) (numbered brackets in original). Given this interpretation, the use of "vulgar, profane or indecent language within the presence or hearing of children" must necessarily

disturb "the peace or quiet of any neighborhood, family or person" in order to constitute a violation under I.C. § 18–6409. The Court's opinion in this case reinterprets I.C. § 18–6409 to create overbreadth and allow the conviction of anyone who maliciously and willfully "[2] fires any gun or pistol, or [3] uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner." This interpretation undermines the very purpose of the statute. For example, given the Court's interpretation, a person could conceivably be convicted for disturbing the peace by firing a gun or pistol without any showing that the peace or quiet of any neighborhood, family or person had been disturbed as a result.

The Court takes issue only with the so-called "third part" of I.C. § 18–6409, which regulates the use of "vulgar, profane or indecent language within the presence or hearing of children." According to the Court, "this part of the statute is not intended to apply to 'fighting words' because there need not be any addressee in order to violate the statute." *Hammersley* interpreted I.C. § 18–6409 to the contrary. "Through its specific intent requirement that the regulated speech be malicious, I.C. § 18–6409 limits its application to those circumstances where the speech is intended to 'vex, annoy, or injure another person.' Such communications ... do not come within the realm of protections afforded by either the U.S. or Idaho Constitutions." *Hammersley*, 134 Idaho at 821, 10 P.3d at 1290. Clearly, merely uttering undirected "fighting words" within the presence or hearing of children would not be malicious and willful, and therefore would not constitute a violation of I.C. § 18–6409. Given the requirement that the words be communicated with an intent to "vex, annoy, or injure another person," the words must necessarily be communicated directly to the child or to someone else in the presence or hearing of the child. Under either scenario, the communication constitutes unprotected speech, which may be regulated by the state.

The state has a legitimate interest in "protecting minors from exposure to vulgar and offensive spoken language." *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 676,

106 S.Ct. 3159, 3161, 92 L.Ed.2d 549, 554 (1986) (citing *FCC v. Pacifica Found.*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978)). To the extent I.C. § 18–6409 criminalizes speech, it does so pursuant to this interest. The Court in *Hammersley* narrowly construed I.C. § 18–6409 in order to uphold its constitutionality. The Court's decision in this case is an unexplained abrogation of that construction which undermines legitimate state interests in protecting children. The result is to abandon a constitutional construction in favor of an unconstitutional one that is inconsistent with this Court's decisions in *Suiter* and *Hammersley*.

In the presentation of this case there was some focus upon the potential that the statute would infringe upon parent-child relationships, criminalizing events within the family. That is a legitimate concern to be dealt with in an actual case, not an abstract analysis which amounts to nothing but an advisory opinion. This is not a parent-child case. This case has nothing to say about that relationship. Principles that protect parents and guardians in either discipline or the hurley-burley of family life are not applicable in this case. Mr. Poe is not the child's parent, guardian or other care provider. He is a man who was troubled by another relationship and took his frustrations out on a child. He initiated by insulting the manhood of the child's father. He then intimidated the child by threats and use of a racial and/or religious epithet. The child sought sanctuary in a locked car. Mr. Poe disturbed the peace of this child. That peace is protected by a constitutional provision of this statute that the Court has abandoned, inconsistent with prior rulings of this Court.

Saving the day by justifying a conviction under another provision of the statute which was not the focus of this case raises more concerns than it solves. The Court has now found a valid conviction, inferring a concession that the record does not justify. This creates the anomaly that Mr. Poe now stands convicted of a charge that may have been based upon what the Court has determined was an unconstitutional provision or may have been convicted on a constitutional provi-

sion in the statute. There is no way to tell which.

In *State v. Townsend,* 124 Idaho 881, 887, 865 P.2d 972, 978 (1993), the Court addressed the result when a jury verdict could have been based upon alternate grounds but did not specify the ground:

> The jury verdict did not specify whether the jury found that the aggravated battery was committed with Townsend's vehicle, his hands, or both. Thus, we are unable to discern whether the jury based its verdict on a valid or an invalid legal theory.

Since the basis of the verdict could not be determined, the case was remanded for a new trial. The same situation exists in this case. Mr. Poe pled not guilty. The verdict does not specify the basis of the verdict. It might have been on the basis the Court has determined to be unconstitutional or upon the basis the Court has determined to be constitutional. He did not plead guilty to either. The case must be remanded for a new trial, although the proper resolution would be to affirm the conviction utilizing the construction this Court gave I.C. § 18–6409 in *Hammersley* and *Suiter.* The logic of the Court's decision would lead to a reversal for new trial, not affirmance of the conviction.

Chief Justice TROUT concurs.