**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51479**

| | |
|---|---|
| In the Interest of: John Doe (2024-03) Juvenile Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, | ) ) |
| Petitioner-Respondent, | ) ) ) |
| v. | ) ) |
| JOHN DOE (2024-03), | ) ) ) |
| Juvenile-Appellant. | ) ) ) |

**Filed: July 17, 2025**

**Melanie Gagnepain, Clerk**

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Cathleen MacGregor Irby, Magistrate.

Order of the district court, on intermediate appeal, <u>reversed</u>; order of the magistrate court, <u>vacated</u>, and <u>case dismissed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

John Doe appeals from the district court's decision, on intermediate appeal, affirming the magistrate court's order finding Doe fell within the purview of the Juvenile Corrections Act ("JCA") and that he committed the offense of disturbing the peace. Doe argues the district court erred in affirming the magistrate court because there was insufficient evidence that Doe acted with malice or disturbed the peace of the alleged victim. Doe argues he did not disturb the peace because his statement "snitches get stitches," when delivered in a joking and laughing manner, did not constitute a true threat; thus, he did not threaten the alleged victim. For the reasons set forth below, the order of the district court affirming the magistrate court is reversed, the magistrate

1

court's order finding Doe's conduct brought Doe within the purview of the JCA is vacated, and the case is dismissed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Chelsea Anderson was at a park with her three children attending the children's soccer games. After the oldest child finished his game, he and some friends went to the skatepark portion of the park. Later, a friend of Anderson's son told Anderson that her son had been kicked in the back. Anderson went over to investigate, asked her son who kicked him, and her son pointed to a kid. Anderson then confronted the group of kids Doe was with. According to Anderson, the kids were all laughing and acting like "the whole thing was a joke." Doe responded to Anderson's confrontation by saying, "snitches get stitches." Doe repeated the statement more than once and, at one point, Anderson responded, "Does that make you feel better?" The interaction continued until "a bunch of other adults came and got in Doe's face," and Anderson walked away.

Doe is a minor; Anderson is an adult. Anderson told the kids they needed to be respectful. Anderson said something along the lines of, "You think you're man enough to confront, like to talk to an adult this way." Some girls were watching the boys and one of them was recording Doe's confrontation with Anderson. Although not entirely clear, it appears Anderson acknowledged to the officers she was making fun of the girl filming the interaction on her cell phone, challenging the young girl and saying something along the lines thinking their boyfriends were "man enough against adults." Anderson told her fiancé, who contacted law enforcement. Doe was issued a citation for disturbing the peace. After a hearing, the magistrate court found Doe fell within the purview of the JCA. Doe appealed to the district court, and, on intermediate appeal, the district court affirmed the magistrate court's holding that Doe's conduct fell within the purview of the JCA. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal of a decision rendered by the district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision. *State v. Phipps*, 166 Idaho 1, 4, 454 P.3d 1084, 1087 (2019). However, to determine whether the district court erred in affirming the magistrate court, we review the record before the magistrate court to determine whether substantial and competent evidence supports the magistrate's findings of fact and whether

the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). Additionally, "[i]n an appeal from a district court's determination of a case appealed to it from the magistrate court, we review the decision of the district court to determine whether it correctly applied the applicable standard of appellate review." *In re Guardianship of Doe*, 157 Idaho 750, 753, 339 P.3d 1154, 1157 (2014).

## III.

## ANALYSIS

Doe argues we should reverse the district court, on intermediate appeal, affirming the magistrate court's finding that he falls within the purview of the JCA. Doe argues there is insufficient evidence that he acted with malice or that he disturbed Anderson's peace. Doe argues that, as a matter of law, his statement did not constitute a threat within the meaning of the disturbing the peace statute and thus, he did not disturb Anderson's peace by threatening her. The State argues there is substantial evidence supporting the magistrate court's decision and the district court properly affirmed the magistrate court.

Idaho Code § 18-6409(1) provides:

> Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood, family or person, by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or fires any gun or pistol, or uses any vulgar, profane or indecent language within the presence or hearing of children, in a loud and boisterous manner, is guilty of a misdemeanor.

True threats of violence lie outside the bounds of the First Amendment to the United States Constitution's protection and a statement can count as such a threat based solely on its objective content. *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). A true threat is a "serious expression" conveying that a speaker means to "commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003). It is the "true" nature of the threat that separates a real possibility of violence from jest, exaggeration, or hyperbole. *Counterman*, 600 U.S. at 74. However, the *Counterman* Court concluded that in order to limit the chilling effects of prohibition on speech, the First Amendment required a subjective mental state on the part of the author such that some true threats were shielded from liability. *Id*. at 74-75. The Court concluded that in order to limit the chilling effect, liability must be conditioned upon the State's showing of a culpable mental state. *Id*. at 75. The Court recognized the cost of requiring proof of the author's mental state:

> It will shield some otherwise proscribable (here, threatening) speech because the State cannot prove what the defendant thought. But the added element reduces the prospect of chilling fully protected expression. As this Court has noted, the requirement lessens "the hazard of self-censorship" by "compensat[ing]" for the law's uncertainties.

*Counterman*, 600 U.S. at 75 (quoting *Mishkin v. New York*, 383 U.S. 502, 511 (1966)). Ultimately, the Court adopted a recklessness standard: "[i]n the threats context, it means that a speaker is aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Id.* at 79 (quoting *Elonis v. United States*, 575 U.S. 723, 746 (2001) (ALITO, J., concurring in part and dissenting in part)). The Idaho Supreme Court has defined the term "threatening," in I.C. § 18-6409(1) as "statements where the speaker intends to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *State v. Poe*, 139 Idaho 885, 895, 88 P.3d 704, 714 (2004). Here, Doe was charged with threatening Anderson, i.e., that Doe intended to communicate a serious expression of an intent to commit an act of unlawful violence to Anderson or another.

At the hearing, the State called two witnesses, the officer who investigated the incident and Anderson. Anderson testified on direct examination that her son told her that somebody had kicked him in the back, and so "being his mom I wanted to go find out what happened. So I went over there and I confronted a bunch of kids that ranged from like ten to like 13." She also testified that when she confronted the group of kids, she "just asked him--I was like, Are you guys being disrespectful to my son? And they were laughing and said--that's when he said, 'snitches get stitches', because my son had told me what was happening and what had happened in that moment." Anderson described Doe's demeanor as, "he thought the whole thing was funny. He was laughing, he was scootering on his scooter. His friends were laughing. They just thought the whole thing was a joke." When asked how she felt about the situation, Anderson testified she was mainly angry, explaining: "my son should feel safe going to hang out with his friends at the skate park. I should not have to worry about things happening to him and being fearful because honestly I don't--like what does that even mean? Like saying 'snitches get stitches'?" She testified that she felt she had to pull her son away from the situation to prevent any continued bullying and felt fearful and angry as a mom. Anderson clarified that her only concern was "continued bullying" and "the fact that they all thought it was a joke. So I didn't know how far it would continue." On redirect, Anderson agreed that the kids were swearing at her and making a joke out of "everything."

4

Anderson was asked, "And did all of that amount to you feeling scared, threatened, offended in any way?" Anderson responded, "They weren't being very nice."

During closing argument, the State noted that, during the confrontation, Anderson made comments to the kids similar to, "does this make your mom proud, or do you speak to your mom with that mouth or something along that line." The State also argued that Anderson felt threatened for herself and her son, it made her "scared for her kid to be a kid." Defense counsel objected, arguing that Doe was charged with threatening Anderson, not Anderson's son. Finally, the State argued Doe's statements constituted either tumultuous or offensive conduct or a threat.

Doe was charged as follows: "[Doe], on or [about] April 2, 2022, in the County of Ada, State of Idaho, did willfully and maliciously disturb the peace and/or quiet of another person: Chelsea Anderson, by tumultuous or offensive conduct and/or threatening." The magistrate court found Anderson credible. The magistrate court found that Doe acted willfully and maliciously and disturbed Anderson's peace by a threat[1] and, thus, Doe fell within the purview of the JCA. The district court, after reviewing the record, adopted the magistrate court's factual findings and noted that when Doe made the statement, he "laughed and thought the whole thing was funny." Doe was "laughing, scooting on his scooter. His friends were also laughing." According to Anderson, Doe was being disrespectful and Doe and his friends "thought the whole thing was a joke." According to the magistrate court, Anderson did not know Doe or what his intentions were.

On intermediate appeal, the district court affirmed the magistrate court's finding that the statement "snitches get stitches" is a threat and is language not requiring sophisticated analysis. The district court reasoned that Doe's statements were made to Anderson in a public place in the presence of others who heard the statements. The district court noted that although Doe made the statement while laughing and Doe and his companions thought the situation was a joke and never expressly threatened Anderson or her son, Doe's statement conveyed "a belief that retaliation was the expected consequence and could be interpreted as both a prediction and encouragement of violence." The district court further concluded that the magistrate court was in the best position to evaluate demeanor and conclude that Doe's statements "constituted a threat or express and

---

[1] On appeal, the State does not argue that Doe's conduct alternately disturbed Anderson's peace by tumultuous or offensive conduct; thus, we need only address whether Doe's statement constituted a threat.

5

encourage retaliation. Understandably, the statement triggered Anderson's internal sensibilities as a protective parent."

While the magistrate court considered the effect of Doe's statements on Anderson, it did not analyze Doe's intent: i.e., whether Doe intended to "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Poe*, 139 Idaho at 895, 88 P.3d at 714. If Doe did not intend to communicate a serious threat, then, as a matter of law, and regardless of Anderson's perception, he did not threaten her.

Here, although the magistrate court found that Anderson perceived Doe's statement as a threat, there is nothing in the record establishing that Doe intended to communicate a serious expression of an intent to commit an act of unlawful violence towards Anderson or anyone else. As Anderson repeatedly testified, Doe and his friends were laughing at Anderson, were treating the whole situation as a joke, and were acting disrespectfully towards Anderson. Nothing about that evidence conveys Doe's intent to communicate a serious threat. In fact, it shows the opposite: Doe did not take any of the interaction seriously, including his own comments.

On intermediate appeal, like the magistrate court, the district court focused on only what Anderson perceived, not on what Doe intended to convey. This Court cannot reconcile the magistrate court's and the district court's factual findings that Doe made the statements while he was laughing and treating the situation as a joke, while simultaneously concluding that Doe's comments communicated a serious threat. As indicated by the testimony, it appears that what Doe intended was to act disrespectfully towards Anderson by failing to take her seriously, laughing at her, continuing to ride his scooter, and generally acting like an obnoxious thirteen-year-old. By the magistrate court's own findings, and affirmed by the district court on intermediate appeal, nothing Doe did or said was serious; instead, Anderson, and her behavior and demands, were a joke to Doe.

The State argues Doe's statements conveyed a threat to Anderson about her son for pointing out who kicked him. First, it is not entirely clear that Doe's statements applied to Anderson's son, although we acknowledge that Anderson could have perceived them that way. Nonetheless, regardless of to whom the term "snitch" referred, it does not change the fact that Doe's statements were communicated in a laughing, joking manner, while he was likely showing off to his friends.

6

As noted in *Counterman*, a threat must be considered a "true" threat of violence to distinguish the statement from "jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow." *Counterman*, 600 U.S. at 74. In this case, Doe's statement, when taken in context, did not convey a real possibility that violence would follow. First, the statement was made between strangers with no ongoing affiliation; thus, outside this one interaction, it was unlikely that Doe would ever see Anderson or her son again. Second, these statements occurred in a public place, with other people around, in a context that suggests the statements were made in jest or were hyperbole. Third, nothing establishes that Doe made the statements in anything other than a casual manner, as he was laughing and "scootering on his scooter" while making the comments. Fourth, there was no evidence presented that Doe acted aggressively towards Anderson or made the statements in an aggressive manner. Fifth, it is difficult to understand how Doe posed any kind of serious threat of retaliation in this context when Anderson could control who had access to her son and could simply keep her son in a location where he could be more closely supervised. Thus, there was nothing about the statement that, in the context of this case, indicated it was a true threat.

At most, the evidence in the record supports that Doe was not threatening Anderson but instead, was more interested in showing off to his friends and goading Anderson who decided to confront a group of young people at a skate park. The record is clear that Doe and his friends were obnoxious, disrespectful, and unkind; that, however, does not make Doe's statements true threats. There was nothing serious about the threat and there was no evidence presented regarding Doe's intent.

We conclude that, as a matter of law, the State failed to establish Doe intended to convey a serious threat. Because the State did not prove the "threat" element of the disturbing the peace charge, it did not establish all elements of the offense beyond a reasonable doubt. The district court erred in affirming the magistrate court's conclusion that Doe fell within the purview of the JCA. As this issue is dispositive, we need not address the other arguments.

## IV.

## CONCLUSION

The district court erred in affirming the magistrate court's conclusion that Doe's statement constituted a threat, and thus, he fell within the purview of the JCA for disturbing Anderson's peace. As a result, we reverse the district court's order on intermediate appeal, vacate the

7

magistrate court's finding that Doe fell within the purview of the JCA, and the case is dismissed.

Judge LORELLO and Judge TRIBE, **CONCUR**.